FREEMAN J. SCOTT

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa March 24, 1892.*

1. CRIMINAL LAW — *abortion — attempt to produce — sufficiency of indictment.* An indictment for an attempt to produce an abortion, which not only charges the offense in the language of the statute, but also so plainly that the nature of the offense may be easily understood by the jury, is sufficient on motion to quash or in arrest of judgment.

2. Counts of an indictment for an attempt to produce an abortion, which allege that the defendant used certain instruments (which are named) in and upon a woman pregnant with child, by forcing and inserting them into her womb, and thereby attempted to produce a miscarriage, it not being necessary to do so to preserve her life, sufficiently set out the facts showing an attempt to produce the miscarriage, and to show a criminal intent.

3. SAME — *evidence showing motive.* In a prosecution for an attempt to produce an abortion, it is proper for the People to introduce evidence showing a motive on the part of the defendant for making the attempt. For that purpose, proof that the defendant had sexual intercourse with the prosecutrix, and that he was the father of her child, is proper, and an instruction calculated to induce the jury to ignore the testimony as to his intercourse with her is properly refused.

4. SAME — *proof of use of instruments alleged in the indictment.* Where an indictment charges that an attempt has been made to produce a miscarriage by the use of several different instruments, it is not necessary to prove that the defendant used all the instruments described. The indictment will be sustained by proving that one of the instruments was used as alleged.

5. SAME — *express allegation includes what is necessarily implied — attempt includes intent.* It is a principle of criminal pleading that whatever is included in or necessarily implied from an express allegation need not be otherwise averred. The word "attempt" necessarily includes an intent to do the act.

6. SAME — *attempt, defined.* An attempt is an intent to do a particular thing with an act toward it falling short of the thing intended. The only distinction between an intent and an attempt to do a thing is that the former implies the purpose, only, while the latter implies both the purpose and an actual effort to carry that purpose into execution.

7. SAME—*when intent must be alleged and proved.* Where an act is indifferent in itself, the intent with which it was done becomes material, and must be alleged and proved; but where the act is unlawful in itself, the proof of justification lies with the defendant, and in failure thereof the law implies a criminal intent. So an attempt to produce an abortion not necessary to preserve life, by the use of instruments, is such an unlawful act that the law will imply therefrom a criminal intent.

8. INSTRUCTIONS—*omitting part of the evidence from consideration.* On the trial of one for an attempt to produce an abortion by the use of instruments, the defendant examined medical experts to show that if a physician had performed the operations which the prosecuting witness testified to, an abortion would have been produced, and also to show that the fœtus did not show such injury as would have been caused by such operations. The defendant asked an instruction that it was necessary for the People to prove to the satisfaction of the jury, beyond all reasonable doubt, that some person attempted, in manner and form as charged in the indictment, and at the time and place therein alleged, to commit on the person of the prosecutrix a criminal abortion, and that it was just as necessary to prove that the instruments were inserted into the womb in manner and form as alleged, and beyond all reasonable doubt, as it was to prove who inserted them, and in determining whether there was ever any attempt, at the time and place and in the manner and form as alleged, to commit an abortion, etc., the jury were at liberty to take into consideration the testimony of the medical experts, and that if, "after considering carefully all of such testimony, in connection with all the other facts and circumstances detailed on the trial," they entertained any reasonable doubt "as to whether there was ever any attempt to commit an abortion," etc., then they should find the defendant not guilty, which the court refused: *Held*, that the instruction was clearly erroneous, as being calculated to make the impression upon the jury that they were only to consider the expert testimony in connection with the facts recited, and not in connection with all the evidence.

9. SAME—*defects cured by other instructions given.* An instruction given for the prosecution, on the trial of one for attempting a miscarriage of a woman with child, was objected to on the ground that the jury were thereby required to find that the defendant attempted, with instruments, to produce the miscarriage as charged, but were not also required to find that such attempt was made with the intent to produce such miscarriage. On behalf of the defense the court instructed the jury, that unless the People had further proved to the satisfaction of the jury, beyond all reasonable doubt, that the defendant inserted the instruments at the time and place charged in the indictment, intending then and there to produce an abortion, they should find for the defendant: *Held*, that whatever defect, if any, existed in the first instruction was cured by that given for the defendant.

10. SAME—*giving undue prominence to parts of testimony.* There is no error in refusing instructions which single out particular portions of the evidence and direct the jury to consider them, to the exclusion of other parts of the testimony equally important. Nor is it error to refuse instructions when all that is material in them is embraced in those which are given.

11. SAME—*referring to part and omitting other parts of the testimony.* On a trial of one for attempting to produce an abortion an instruction was asked by the defendant, to the effect that the prosecuting witness had sworn that defendant was the father of the child, and the defendant had sworn that he was not; that both were competent witnesses; that if the jury believed them to be of equal credibility, and that theirs is the only testimony in the case in reference to the truth or falsity of that proposition, then the testimony of the one was an offset to that of the other, and the question of the paternity of the child was not established. There were other facts and circumstances bearing on that question : *Held,* that the instruction was properly refused.

12. It is proper to instruct the jury to determine, from the evidence, whether a certain conclusion is thereby established, but it is not proper to instruct them to determine whether the testimony of certain witnesses is the only testimony upon a given question.

13. SAME—*assuming the existence of matters in dispute.* Where a diary was referred to by a defendant to refresh his memory as to what he did on certain days during the summer and fall of 1889, and it was admitted in evidence, for the inspection of the jury, on an issue whether it was made at the time it purported to have been, the defendant asked the court to instruct the jury, "that the diary of the defendant kept through the year 1889 is in evidence," etc., which was refused : *Held,* properly refused, as the instruction assumed the existence of the very fact which was in dispute,—whether the diary was kept in 1889, or was made up after the year had passed.

14. EVIDENCE—*of several attempts to accomplish the purpose charged.* On the trial of one for an attempt to produce an abortion on a pregnant woman, proof of three attempts, at different times, was admitted without objection : *Held,* that the proof was competent, as the several acts were parts of but one attempt to produce the same abortion. Acts of the defendant tending to show his knowledge of the woman's pregnancy and his intention to commit the offense may be shown, whether they were prior or subsequent to the particular act charged in the indictment.

15. SAME—*of statements of prosecuting witness.* On the trial of one for attempting an abortion, the statements of the prosecuting witness made to a third person when the defendant is not present, are improper if introduced as a part of the original case; but if she is asked, on her

cross-examination, as to what she said to such person, she may, on re-examination, be allowed to testify to what she did say to such person, though the defendant was not present.

16. If a witness is asked if he did not say a certain thing, and denies having said it, he may afterward show what he did say; and when a witness testifies to a part of a conversation, the other party is entitled to show all that was said on the same subject in that conversation.

17. PRACTICE—*reading to jury from medical books.* In questioning physicians who testified on the trial of a case, a passage was read to them out of a medical book, and they were asked if the statements therein made accorded with their observations, to which inquiry they testified affirmatively: *Held*, that such passage was properly allowed to be read to the jury in the argument of counsel.

18. SAME—*exceptions to remarks of State's attorney.* Where the remarks of the State's attorney, in his address to the jury, are not shown by proper recitals in the bill of exceptions, and the attention of the trial judge is not called to them when they are made, but they are allowed to pass unchallenged, such remarks will not afford grounds of reversal.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. JAMES H. CARTWRIGHT, Judge, presiding.

Mr. O. F. WOODRUFF, and Mr. J. D. ANDREWS, for the plaintiff in error:

It is a general rule that indictments upon statutes must state all the circumstances which constitute the definition of the offense in the act, so as to bring it clearly within it. *Commonwealth* v. *Hampton*, 3 Gratt. 531; *State* v. *McKenzie*, 42 Me. 392; 1 Bishop on Crim. Proc. (2d ed.) sec. 612.

When the statute simply designates the offense, but does not describe or name its constituents, it is not sufficient to merely charge the offense in the language of the statute. *State* v. *Campbell*, 29 Texas, 44; *Commonwealth* v. *Dean*, 110 Mass. 65; *State* v. *Absence*, 4 Port. 401; *Anthony* v. *State*, 29 Ala. 27; *Johnson* v. *People*, 113 Ill. 99.

In all indictments for attempts, the *gravamen* of the offense is the act and the intent, and the intent must be specifically alleged and proved. *State* v. *Nilson*, 30 Conn. 501; *State* v. *Ross*, 25 Mo. 426; *Rex* v. *Phillip*, 6 East, 464; *State* v. *Mar-*

*shall,* 14 Ala. 411; *State* v. *Martin,* 3 Dev. 329; *Johnson* v. *People,* 113 Ill. 99; *State* v. *Johnson,* 11 Texas, 22.

Though it is often sufficient to follow the words of the statute, it is not so when the statute does not contain words sufficient to define the offense. *Herrington* v. *State,* 54 Miss. 490; *Jessie* v. *State,* 28 id. 100; *Sarah* v. *State,* id. 267; *State* v. *Graves,* 34 N. H. 514.

An act which was an offense at common law must be charged in the indictment as at common law. *State* v. *Beasley,* 18 Ala. 535; *People* v. *Enoch,* 13 Wend. 159; 27 Am. Dec. 197.

The words "willfully, maliciously and feloniously" are not apt words, because they may be indicative of implied malice, which is not sufficient. *Anthony* v. *State,* 13 S. & M. 264.

The charge in the indictment must bring out all the legal characteristics of the offense, and must put in all that must be in a definition. Wharton on Crim. Pl. and Pr. sec. 153; *State* v. *Dalton,* 2 Murph. 379; *State* v. *Johnson,* 11 Texas, 23.

The attempt to commit a crime consists in an act of endeavor to commit it and an intent to commit it. *State* v. *Wills,* 31 Conn. 212.

The pleader must always allege facts, and not legal conclusions. *Wenn* v. *State,* 35 Ind. 486.

The word "attempt" is a legal conclusion. *State* v. *Absence,* 4 Port. 401.

The intent in cases of attempts is always a question of fact for the jury, and can not be implied from the act itself. *Roberts* v. *People,* 19 Mich. 402; 1 Bishop on Crim. Law. secs. 729-735.

When there are two or more felonies in one indictment the conviction can not be sustained upon a general verdict. *Lyons* v. *People,* 68 Ill. 271; *Goodhue* v. *People,* 94 id. 37; *People* v. *Jenness,* 5 Mich. 327; *People* v. *Clark,* 33 id. 112.

It is not proper to permit counsel to read medical books to the jury. *People* v. *Wheeler,* 60 Cal. 581; 4 Am. Crim. Rep. 191; *Yoe* v. *People,* 49 Ill. 412; *People* v. *Hall,* 48 Mich. 482.

The testimony of Dr. Chandler as to what Ruth Aument said at Compton was in the nature of hearsay evidence, and inadmissible.   *State* v. *Gedicke,* 43 N. J. 86 ;  4 Am. Crim. Rep. 6 ;  *Kidwell* v. *State,* 63 Ind. 384 ; 3 Am. Crim. Rep. 236.

Even upon the cross-examination eliciting part of a conversation, that does not necessarily let in proof of the whole of it. Greenleaf on Evidence, sec. 467 ; Wharton on Evidence, 572 ; Wharton on Crim. Evidence, sec. 493, note 1.

Impeaching evidence must be in reference to some question material to the issue, and the evidence offered must at least tend to contradict the witness sought to be impeached, otherwise it is inadmissible.   It can not be done upon collateral matter.   The answers of the witness on collateral questions are conclusive.   Greenleaf on Evidence, 449 ; *Carpenter* v. *Ward,* 30 N. Y. 243 ; *Plato* v. *Reynolds,* 27 id. 586 ; *Railway Co.* v. *Bell,* 70 Ill. 102.

Mr. GEORGE HUNT, Attorney General, and Mr. WALTER STAGER, State's Attorney, for the People :

The indictment not only charges an attempt "in the terms and language of the statute," but also "so plainly that the nature of the offense may be easily understood by the jury," and by it the plaintiff in error was fully informed "of the nature and cause of the accusation."   This is all that is required. *Stone* v. *People,* 2 Scam. 338 ; *Townsend* v. *People,* 3 id. 328 ; *Eells* v. *People,* 4 id. 510 ; *Mohler* v. *People,* 24 Ill. 27 ; *Morton* v. *People,* 47 id. 475 ; *Warriner* v. *People,* 74 id. 348 ; *Plummer* v. *People,* id. 364 ; *Allen* v. *People,* 82 id. 612 ;. *Cole* v. *People,* 84 id. 217 ; *Fuller* v. *People,* 92 id. 184 ; *Ker* v. *People,* 110 id. 649 ; Barrett on Crim. Pl. (2d ed.) 403 ; Morris on Crim. Law, 313 ; *Lyons* v. *People,* 68 Ill. 274.

As the word "intent" is not in our statute, the allegation of an "attempt" to produce a miscarriage by certain specified acts is a sufficient allegation such acts were done with the "intent" to produce a miscarriage.   *Thompson* v. *People,* 96 Ill. 158.

An attempt is, according to common legal understanding, an intent to do a thing combined with an act which falls short of the thing intended. 1 Bishop on Crim. Law, (3d ed.) 659.

An attempt always implies a specific intent—not merely a general mental culpability. When we say that a man attempted to do a thing, we mean that he intended to do, specifically, it, and proceeded a certain way in the doing. 1 Bishop on Crim. Law, (3d ed.) secs. 662, 558; *Johnson* v. *State,* 14 Ga. 55; *Prince* v. *State,* 35 Ala. 367; *Gray* v. *State,* 63 id. 73; *Hart* v. *State,* 38 Texas, 392; *Baysinger* v. *People,* 115 Ill. 424.

If objection had been made to the proof of the several attempts, it would have been the duty of the court to overrule it. *Baker* v. *People,* 105 Ill. 456; *Lamb* v. *State,* 66 Md. 287; *Commonwealth* v. *Corbin,* 136 Mass. 430; 3 Russell on Crimes, (5th ed.) 377; *Commonwealth* v. *Choate,* 105 Mass. 451; *Commonwealth* v. *McCarthy,* 119 id. 354; *Commonwealth* v. *Jackson,* 132 id. 16; *People* v. *Josselyn,* 39 Cal. 393.

The proper way to bring the remarks of counsel before this court is by recital in the bill of exceptions, and not by affidavits. *Mayes* v. *People,* 106 Ill. 314.

It was proper to show the feelings which Scott and Ruth entertained toward each other, first, because such evidence tended to show whether the one was likely to make, and the other to permit, an attempt to procure an abortion; and second, because it tended to show, with the other evidence, whether or not Scott was the father of Ruth's child. 2 Wharton on Crim. Law, (8th ed.) sec. 1325; *Holcomb* v. *People,* 79 Ill. 409; *Thayer* v. *Davis,* 38 Vt. 163; *Beers* v. *Jackman,* 103 Mass. 192; *Nicholson* v. *State,* 72 Ala. 176; *Daily* v. *Daily,* 64 Ill. 334; *Bast* v. *Bast,* 82 id. 585.

Where a witness testifies to a part of a conversation, the other party will be entitled to have it all. *Tracy* v. *People,* 97 Ill. 105; *Commonwealth* v. *Goddard,* 80 Mass. 404.

Where a witness is asked if she did not say a certain thing, and denies having said it, she may afterward show just what she did say, either on re-examination or by another witness. *Bressler* v. *People,* 117 Ill. 435.

Where the opposing case is, that the witness testified under corrupt motives, or that her testimony is a fabrication of recent date, it may be shown that on other occasions her statements were in harmony with those made on the trial. *Gates* v. *People*, 14 Ill. 438; *Stolp* v. *Blair*, 68 id. 544; Wharton on Crim. Evidence, sec. 492.

Defendant's nineteenth instruction was properly refused, because it asserts that the jury must acquit unless they believe the defendant inserted the "instruments aforesaid," four in number, into the womb of Ruth Aument, etc. It was sufficient to prove the use of either of the instruments with intent to produce an abortion. Bishop on Directions and Forms, sec. 228; *State* v. *McClintock*, 1 Greene, 392.

As to the remarks of the State's attorney in addressing the jury, see *Wilson* v. *People*, 64 Ill. 195; *Mayes* v. *People*, 106 id. 314; *Campbell* v. *People*, 109 id. 577; 127 id. 518.

Mr. Chief Justice Magruder delivered the opinion of the Court:

This is an indictment against the plaintiff in error for an attempt to produce an abortion. He has been tried before a jury and found guilty, and sentenced by the Circuit Court to imprisonment for one year in the penitentiary.

The indictment contained four counts. Motion was made to quash, and was sustained as to the first and third counts, but overruled as to the second and fourth. After return of verdict of guilty, motions for new trial and in arrest of judgment were made and overruled, and exceptions taken.

*First*, it is charged by the plaintiff in error, that the second and fourth counts of the indictment are defective, because they do not allege an *intent* to procure an abortion.

The second count charges that Freeman J. Scott on, etc., at, etc., "did unlawfully, feloniously and wilfully use and employ a certain instrument, called a 'speculum,' and a certain instrument called a 'catheter,' and a certain instrument called a 'sound,' and a certain instrument called a 'forceps,' and a certain metallic instrument the name of which is to said jurors unknown, and in and upon one Ruth Aument, who was then and there a woman pregnant with child, by then and there forcing, thrusting and inserting said instruments into the private parts and womb of the said Ruth Aument, then and there did thereby unlawfully, feloniously and wilfully attempt to procure and produce the miscarriage of said Ruth Aument, it not being then and there necessary to procure or produce such miscarriage for the preservation of the life of the said Ruth Aument," etc.

The fourth count charges that Freeman J. Scott on, etc., at, etc., "did unlawfully, feloniously and wilfully use and employ a certain instrument called a 'speculum,' and a certain instrument called a 'sound,' and a certain instrument called a 'catheter,' and a certain instrument called a 'forceps,' in and upon one Ruth Aument, then and there being a woman pregnant with child, by then and there forcing, thrusting and inserting said instruments into the private parts and womb of the said Ruth Aument, and then and there did thereby unlawfully, feloniously and wilfully attempt to procure and produce the miscarriage of the said Ruth Aument, and neither of said instruments was then and there used or employed by said Freeman J. Scott, as aforesaid, as necessary for the preservation of the life of said Ruth Aument, and said Freeman J. Scott did not then and there attempt, as aforesaid, to procure or produce the miscarriage of said Ruth Aument as necessary for the preservation of the life of said Ruth Aument," etc.

In *Baker* v. *The People*, 105 Ill. 452, we said in regard to such an indictment as this one: "We think the indictment is substantially good, and that consequently there was no error

in overruling the motion to quash." Although the point here
urged was not specifically made in the *Baker* case, we think
the observation above quoted is applicable to the second and
fourth counts of the present indictment, notwithstanding the
absence therefrom of an allegation of intent.

Section 468 of our criminal code provides that "every in-
dictment or accusation of the grand jury shall be deemed
sufficiently technical and correct which states the offense in
the terms and language of the statute creating the offense, or
so plainly that the nature of the offense may be easily under-
stood by the jury." The statute, under which the present
indictment was found, is as follows: "Whoever, by means of
any instrument, medicine, drug, or other means whatever,
causes any woman, pregnant with child, to abort or miscarry,
or attempts to procure or produce an abortion or miscarriage,
unless the same were done as necessary for the preservation
of the mother's life, shall be imprisoned in the penitentiary
not less than one year nor more than ten years." (1 Starr &
Curts. pp. 753, 857, and secs. 3 and 468).

The counts as above set forth not only charge the offense
in the language of the statute, but so plainly that the nature
of the offense was easily understood by the jury. (*Cole* v.
*The People*, 84 Ill. 216; *Fuller* v. *The People*, 92 id. 182;
*Loehr* v. *The People*, 132 id. 504).

It is a principle of pleading that whatever is included in or
necessarily implied from an express allegation, need not be
otherwise averred. (*Baysinger* v. *The People*, 115 Ill. 419;
*Maynard* v. *The People*, 135 id. 416). Although the statute
does not use the word, "intent," yet the word, "attempt," which
it does use, necessarily includes intent. (*Thompson* v. *The
People*, 96 Ill. 158). "An attempt is an intent to do a par-
ticular thing with an act toward it falling short of the thing
intended." (1 Bishop on Crim. Law, sec. 728). "When we
say that a man attempted to do a thing, we mean that he
intended to do, specifically, it, and proceeded a certain way

in the doing." (Id. sec. 729). "It seems impossible to doubt, that the only distinction between an intent, and an attempt to do a thing, is, that the former implies the purpose only, while the latter implies both the purpose and an actual effort to carry that purpose into execution." (*Prince* v. *State,* 35 Ala. 367; *Lewis* v. *State,* id. 380; *Gray* v. *State,* 63 id. 73; *Hart* v. *State,* 38 Tex. 382; *Johnson* v. *State,* 14 Ga. 55). Counsel for plaintiff in error refer to several cases, where the indictments were framed under statutes which used the word, "intent;" but these cases have no application here, where the statute uses the word, "attempt," only.

These counts sufficiently set out the facts, from which it would appear, that an attempt was made to produce a miscarriage. (*Loehr* v. *The People, supra*). They allege, that Scott used certain instruments, which are named, in and upon Ruth Aument, a woman pregnant with child, by forcing and inserting them into her womb, and *thereby* attempted to produce the miscarriage, it not being necessary to do so to preserve her life. The statute is aimed at "those, who, with the intent and design of producing abortion, shall use any means to that end." (*Slattery* v. *The People,* 76 Ill. 217).

*Second,* it is claimed that there was error in the giving and refusal of instructions. The eleventh instruction given for the plaintiff is objected to, upon the ground that the jury are required to find that the defendant *attempted* with instruments to produce the miscarriage as charged, but are not required to find that such attempt was made with the *intent* to produce a miscarriage. The observations already made in regard to the indictment apply to this instruction. If the jury found that defendant made the attempt, they must necessarily have found that a guilty intent was involved. But whatever defect may have existed in the eleventh instruction in this regard was cured by the seventh instruction given for the defendant, which contained the following direction: "unless the people have further proved to the satisfaction of the

jury, beyond all reasonable doubt, that Freeman J. Scott, * * * inserted these instruments at the time and place as charged in the indictment, *intending* then and there to produce an abortion upon Ruth Aument, you should find the defendant not guilty."

It is next assigned as error, that the court refused to give the twentieth instruction asked by the defendant. The peculiarity of this instruction is, that it directs the minds of the jury to the question whether or not an attempt was made to produce an abortion, as distinct and separate from the question whether or not such attempt was made by the defendant. In order to understand the meaning of the instruction it will be necessary to advert to some of the facts.

The plaintiff in error was a physician, 29 years old, who had been educated at the Hahneman medical college in Chicago. He was unmarried, and was practicing his profession in the village of Rock Falls, in a neighborhood where he had lived from boyhood, and where his parents and sisters resided. Ruth Aument also lived in Rock Falls in a small house with her father, who was a widower and worked, as a machinist, in a foundry. She and her father lived together, and she kept house for him. She and he were the only inmates of the household. In January, 1889, she was sick, and the plaintiff in error was called in to see her professionally. She was then about eighteen years old. The acquaintance thus begun between her and Scott ripened into intimacy. In the summer and fall of 1889 he was much in her company, visiting her at her home, riding with her, going with her to church, to entertainments and to the houses of members of his own family. She swears that he had intercourse with her for the first time in the latter part of August, 1889, in the sitting room at her home; that this intercourse continued during the following September and October; that he instructed her what methods it was necessary to adopt in order to avoid pregnancy; that she failed to have her sickness at the regular

time about the 15th day of October; that, a few days after that, he performed an operation upon her by inserting instruments into her womb, telling her that she would be sick in the usual way as the result of such operation; that she failed to be sick at the regular time in November; that, a few days before, and also a few days after, the 15th of November, he again performed the same operation with the same, or similar instruments, and also using another instrument not used in October; that he told her he might be sent to State's Prison, if what he had done should be found out; that, on Thanksgiving day, she and he went to a party together, and, upon their return, she told him he had "not helped her," and about this time wrote to him, intimating an intention to commit suicide; that he said he could give her medicine, but was afraid to do so; that on April 15, 1890, she sent for him, and told him she could hide her condition no longer, and intended to tell her father, etc. In answer to questions of counsel, she describes, when upon the stand as a witness, the instruments referred to, and the details of the operations therewith, etc.

The defendant testified in his own behalf, and swore that he had never had intercourse with her, and had never attempted to produce an abortion upon her. He admits, that she sent for him on April 15, and told him of her pregnancy, and asked him what he could do for her, but he says that he declined to do anything, and left her. Her father and his father were informed of her condition. Interviews were had between them and their lawyers. An effort was made to induce her to sign a paper exonerating the defendant, which she refused to sign. On April 25, 1890, she and her father took a train to go to Chicago. When the train reached Compton, she gave birth to a child in the car. The child lived about fifteen minutes. At Compton she was taken to the house of a physician named Chandler, where she remained several weeks, and, while there, was visited by a deputy sheriff of the county, named Drake.

A physician testified upon the trial, that the age of the foetus was seven months, or seven months and a half.

The defendant examined two medical witnesses as experts, for the purpose of showing that, if a physician had performed the operations which the prosecuting witness testified to, an abortion would have been produced, and also for the purpose of showing, that the foetus did not show such injury as would have been caused by such operations. The expert testimony tends as much to show, that the operations testified to might not produce a miscarriage, as that they would produce a miscarriage. It also tends to show, that an examination of a foetus would not certainly disclose, in all cases, whether an attempt had been made to arrest its development or not.

The twentieth instruction directed the attention of the jury exclusively to the testimony of the expert witnesses. It told them that it was "necessary for the people to prove *to the satisfaction* of the jury, beyond all reasonable doubt, that some person attempted, in the manner and form as charged in the indictment, and at the time and place therein alleged, to commit on the person of one Ruth Aument, a criminal abortion;" and that it was just as necessary to prove that the instruments were inserted into her womb in manner and form as alleged, and beyond all reasonable doubt, as it was to prove beyond all reasonable doubt who inserted them; and in determining whether there was ever any attempt at the time and place and in the manner and form as alleged, to commit an abortion, etc., they were at liberty to take into consideration the testimony of the medical experts, and, if, "after considering carefully *all of such testimony*, in connection with *all the other facts and circumstances* detailed on this trial," they entertained any reasonable doubt "as to whether *there was ever any attempt* to commit an abortion," etc., then it would be their sworn duty to find the defendant not guilty, etc.

We think that this instruction was clearly erroneous. It virtually directed the jury to disregard the testimony of the

prosecuting witness. The court gave for the defendant at his request eighteen instructions. Several of these called attention to certain items of defendant's proof, and used this language: "then you should take such *fact* into consideration." The 20th instruction was calculated to make the impression upon the minds of the jury that they were only to consider the expert testimony in connection with *such facts,* and not in connection with *all* the evidence. The defendant claimed that the prosecuting witness had not stated *facts.* The question was not whether somebody else attempted to produce a miscarriage, but whether the defendant made such attempt. The opinions of the experts, based upon the appearance of the foetus and upon their judgment as to the effects likely to result from the operations testified to, constituted one item of testimony bearing upon the question involved, but not the only item. It was the duty of the jury to consider *all* the evidence. The plaintiff in error could not have been injured by the refusal to give the 20th instruction, because the jury were told in other instructions to carefully consider all of the testimony introduced, which included as well that of the experts as of the other witnesses. For example, the second instruction given for the defendant contained the following direction: "the law requires the jury to take into consideration all the testimony elicited from the defendant's witnesses as well as that detailed by the prosecution, and if, after a full and dispassionate consideration of all of the evidence in the case, you still have any reasonable doubt in making up a conclusion as to whether or not the defendant did commit the crime of attempt to commit abortion as alleged, then it will be your duty to find the defendant not guilty."

The instruction was also erroneous in assuming, that it was necessary to find that all of the instruments named in the indictment were actually used. Where an indictment charges that an attempt has been made to produce a miscarriage with several different instruments, it is not necessary to prove that

14—141 Ill.

the defendant used all the instruments described. The indict-
ment will be sustained by proving that one of the instruments
was used as alleged. (*The State* v. *McClintock*, 1 G. Greene's
Iowa Rep. 392; Bishop's Direc. and Forms, sec. 228.) The
18th instruction, asked by and given for the defendants, states,
that "it is the duty of the people to prove beyond all reason-
able doubt, that the defendant made the attempt, etc., by
inserting the several instruments, *or some, or one of them,*" etc.

There was no error in refusing the instructions of the de-
fendant numbered 21 and 25, which are objectionable as sin-
gling out particular portions of the evidence, and directing
the jury to consider such portions, to the exclusion of other
parts of the testimony equally important. Such instructions
have often been condemned by this Court. (*Kennedy* v. *The
People*, 44 Ill. 285; *Logg* v. *People*, 92 id. 602; *Coon* v. *Peo-
ple*, 99 id. 371; *Chambers* v. *People*, 105 id. 417; *Campbell*
v. *People*, 109 id. 576.) All that was material in these in-
structions was embraced in instructions that were given. In-
struction no. 21 is liable to the same objection as no. 20; it
calls attention "to the defendant's capacity for committing an
abortion if he desired to," that is to say, to the probability
that a miscarriage would have ensued, if a medical man had
done what he is said to have done. Defendant sought to
show, that he had boils upon his hands to such an extent in
November, that he could not have performed the operations
said to have been performed by him in that month. Instruc-
tion no. 25 called attention to the subject of these boils, and
its refusal could have done no harm, as the jury were espe-
cially directed to take this subject into consideration in in-
struction no. 10 given for defendant.

Instruction no. 22 tells the jury, that it was not necessary
for them to determine whether Scott ever had intercourse with
Ruth Aument or not, or whether he was the father of her child
or not. We think, that this instruction, in the form in which
it was expressed, was properly refused. It is true, that the

charge against the defendant was not seduction, but an attempt to procure an abortion. It was proper, however, for the People to introduce evidence showing a motive for making the attempt. It is not claimed that plaintiff in error was influenced by a desire to make money, nor is it shown that the girl had any money to pay him. The testimony as to the paternity of the child was important, because it tended to show a motive for the act charged. If it was true, that he had been criminally intimate with Ruth Aument, the desire of concealment and the fear of disgrace may have operated as inducements to commit the crime. The vice of the instruction lay in the fact, that it was calculated to induce the jury to ignore the testimony as to the defendant's intercourse with the girl.

Refused instruction no. 23 has reference to the right of the defendant to testify in his own behalf, and as to the duty of the jury to consider his testimony as a witness. This instruction was proper enough, but it was a mere repetition of instructions numbered 11 and 12, which were given for the defendant, and, therefore, its refusal did no harm.

The defendant made use of a diary, alleged to have been kept by him in the summer and fall of 1889, for the purpose of refreshing his recollection as to what he did upon particular days during that period. The People claimed, that the entries were not made at the dates at which they purported to have been made, but that they were prepared afterwards for the trial. The testimony of the defendant tended to show that the entries were genuine and honest, while the appearance of the diary and other facts and circumstances tended to show to the contrary. The record recites that, by agreement of counsel, the diary should be admitted not as evidence to prove the truth of the facts stated therein, but with the right to either party to argue to the jury the question whether or not such entries were genuine, and made at the dates at which they purported to have been made. Instruction No. 24, which

has reference to this diary, begins in this way: "The court further instructs the jury, that the diary of the defendant, *kept through the year 1889*, is in evidence," etc. The instruction was properly refused, because it assumes the existence of the very fact which was in dispute, namely, whether the diary was kept in 1889, or made up after 1889 had passed.

Refused instruction number 26 tells the jury, that the prosecuting witness had sworn that defendant was the father of the child, and that defendant had sworn that he was not the father; that both were competent witnesses; that, if the jury believed them to be of equal credibility, and that "their testimony is the only testimony in the case in reference to the truth or falsity of that proposition," then the testimony of the one was an offset to that of the other, and the question of the paternity of the child was not established by the People. This instruction was properly refused as tending to make the impression, that the testimony of the two interested parties was the only evidence upon the question of the paternity of the child. There were many other facts and circumstances and items of proof bearing upon this question, though there was no direct evidence in relation thereto except the statements of the parties themselves. It is proper to instruct the jury to determine from the evidence whether a certain conclusion is thereby established, but it is not proper to instruct them to determine whether the testimony of certain witnesses is the only testimony upon a given question. All the evidence, which is properly admitted by the Court, is supposed to bear upon the issues involved.

Besides the eighteen instructions given for the plaintiff in error and at his request, twelve were given for the People. We have carefully examined these thirty instructions, in connection with those hereinbefore commented upon, and we think that they were all fair, and many of them exceedingly favorable to the plaintiff in error.

*Third,* it is assigned as error that there was an improper admission of testimony.

It is said, that the Court admitted testimony as to three distinct felonies. We think that the second and fourth counts charge but one offense. The same offense may be set out in several counts in different language. It is said that the use of the instruments on or about October 15 was one attempt, and the use of them twice in the middle of November constituted two other attempts; and that proof of three different attempts was thus allowed to come in. Upon a careful examination of the record, we find the defendant's counsel allowed evidence of the use of the instruments at three different times to be admitted without objection; nor do we find that any motion was made to exclude any part of this testimony, nor was the court asked to put the People to their election. But we think the testimony was competent. Acts of the defendant, tending to show his knowledge of a woman's pregnancy and his intention to commit an abortion upon her, may be proved whether they were prior or subsequent to the particular act charged in the indictment. The three acts proven in this case were not unconnected, but were parts of one transaction; they all together constituted but one attempt to procure the same abortion. "Where several felonies are connected together and form part of one entire transaction, then the one is evidence of the character of the other." (*Lamb* v. *State*, 66 Md. 287.) "Whether it (the evidence) was of acts, which formed part of the principal transaction, or of acts of the defendant at other times, it tended to prove attempts of the defendant to procure the identical result, the intent to procure which constituted the gist of the offense charged." (*Commonwealth* v. *Corbin,* 136 Mass. 430.)

It is objected, that Dr. Chandler was allowed to state what the prosecuting witness said to him while she was sick at his house in Compton after the birth of her child. As the defendant was not present at the conversation with Dr. Chandler,

evidence of it would have been clearly improper if it had been introduced by the People as a part of their original case; but it was introduced as rebutting testimony. Defendant's counsel had asked the prosecuting witness upon cross-examination as to what she said to Drake and Dr. Chandler at Compton, and had introduced in evidence a letter written by her on April 29, 1890, from Compton while she was sick, which letter the defense had obtained possession of through the efforts of a female detective, and in which the witness referred to what she said at that interview at Compton. Under these circumstances the rebutting testimony was not incompetent. If a witness testifies to a part of a conversation, the other party is entitled to show all that was said on the same subject in that conversation. Where a witness is asked if she did not say a certain thing and denies having said it, she may afterwards show what she did say. (*Tracy* v. *People,* 97 Ill. 105; *Bressler* v. *People,* 117 id. 435).

*Fourth,* it is further objected, that the People's counsel were allowed to read to the jury from medical books. Nothing was read except what was a part of the expert testimony. In questioning the physicians who testified, a passage was read to them out of a medical book, and they were asked if the statements therein made accorded with their observations, to which inquiry they answered in the affirmative. It was such passage only that was read to the jury upon the argument, and it was properly read because it was in evidence.

Objection is made to some remarks of the State's Attorney in his address to the jury. The objection is not a sufficient cause for reversal in this case. The remarks are not shown by proper recital in the bill of exceptions. The attention of the trial judge was not called to them when they were made, but they were allowed to pass unchallenged. (*Mayes* v. *People,* 106 Ill. 314; *Wilson* v. *People,* 64 id. 327; *Campbell* v. *People,* 109 id. 577; *Gannon* v. *People,* 127 id. 518).

*Fifth,* It is claimed that the verdict is not sustained by the evidence. It would serve no useful purpose to enter into a detailed discussion of the testimony. We have made a careful examination of it, and we are unable to say that the verdict was wrong; no errors have intervened that have operated to the prejudice of plaintiff in error; it was the province of the jury to pass upon the question of his guilt or innocence; it was for them to determine the credibility of the witnesses, whom they saw, and heard, and observed; it would be "violative of both the letter and the spirit of our criminal code," for us to set aside the verdict under these circumstances. (*Cronk v. The People,* 131 Ill. 60; *Watt* v. *People,* 126 id. 26; *Dacey v. People,* 116 id. 578; *Davis* v. *People,* 114 id. 99).

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*