ELIZABETH FLOWER v. CONTINENTAL CASUALTY COMPANY, Appellant.

Accident Insurance: LIMITATION OF LIABILITY: VIOLATION OF LAW.
1   While only the completed offense of getting on or off a moving engine or car, and not the attempt to do so, is made a crime by Code section 4811, still under the provisions of an accident policy restricting liability for injury while violating the law, an insured, whose injury was received while attempting to get on a moving train without legal right to do so, is bound by the limitations of his policy.

Same: INSTRUCTION: PREJUDICE. Where the evidence in an action
2   on an accident policy tended to show that insured when injured was between two moving freight cars, attempting to retain his position and climb up through, an instruction that if the injury happened while he was attempting to get upon a moving train was not so inapplicable to the facts as to be prejudicial; and especially as the plaintiff was entitled to recover in any event.

*Appeal from Pottawattamie District Court.—*HON. O. D. WHEELER, Judge.

WEDNESDAY, DECEMBER 16, 1908.

ACTION on an insurance policy resulted in a judgment for amount for which defendant offered to confess judgment. From an order granting a new trial, it appeals.— *Reversed.*

*Manton Maverick* and *Saunders & Stuart,* for appellant.

*Mayne & Hazelton,* for appellee.

LADD, C. J.—The insured was a locomotive fireman, and at the time of his death the policy issued by defendant was in force.   It stipulated payment of one thousand

1. ACCIDENT INSURANCE: limitation of liability: violation of law.

dollars to his mother, the plaintiff, in event of his accidental death, unless this resulted (1) from voluntary exposure to unnecessary danger or obvious risk of danger, or (2) where the accidental injury results from or is received while quarreling, fighting or violating the law, in which event but one hundred dollars would be paid.   The defendant offered to confess judgment for one hundred dollars, but interposed the defense to plaintiff's demand for full indemnity that the circumstances of Flower's death were such as to bring it within one or both of the above exceptions.   The court instructed the jury, with reference to the last of these, that if the accidental injury which caused his death was the result of an act on his part while engaged in an attempt to get upon a moving train without the consent of the person in charge, he not being an officer of the law or an employee, the verdict should be for the defendant.   Was this erroneous?   The district court in granting a new trial so held, and the ruling is assailed on two grounds:   (1) For that the instruction was correct; but, if erroneous, (2) was without prejudice, inasmuch as the verdict must have been for defendant.   The criticism of the instruction is that it treats attempting to get on a moving train as a violation of law, whereas the statute does not denounce as an offense such attempt, but the completed act of getting on.   See *Smith v. Aetna Life Ins. Co.,* 115 Iowa, 217.   Section 4811 of the Code declares that:   "If any person not employed

thereon, or not an officer of the law in the discharge of his duty, without the consent of the person having the same in charge, get upon or off any locomotive engine or car of any railroad company while the same is in motion, or elsewhere than at the established depots of such company, or get upon, cling to or otherwise attach himself to any such engine or car for the purpose of riding upon the same, intending to jump therefrom when such engine or car is in motion, he shall be guilty of a misdemeanor."

To constitute the crime here denounced the accused must have gotten on or off the car or locomotive, but the policy restricts liability both (1) where the injury results from violating the law and (2) where received while violating the law. The first contemplates the completion of the offense, and the liability is reduced if the injury is one of its results. The purpose of the last is to restrict liability where the injury is received in the active progress of the offense—while it is being perpetrated, and even though it never be fully consummated, this will not obviate the application of this condition in the policy. Now an "attempt" is an act tending toward the accomplishment of a purpose which exceeds a mere intent or design but falls short of the execution of it. *Lovett v. State,* 19 Texas, 174, 177. It implies an intent formed and also an endeavor to commit the offense. *State v. Evans,* 27 Utah 12 (73 Pac. 1047). "An attempt" is any intent to do a particular thing with an act falling short of the thing intended. When we say a man attempted to do a thing, we mean that he intended to do specifically it and proceeded a certain way in the doing. *Scott v. People,* 141 Ill. 195 (30 N. E. 329). An "attempt" ordinarily is defined as an act done in part execution of a crime, and therefore what is done prior to consummation must be regarded as attempting. It includes all the acts essential to constitute the offense lying between preparation—getting in readiness—to perform the acts, and their final consum-

mation.  But all these intermediate acts are essential to the commission of the offense, and therefore a person in doing any of them with such purpose is in fact engaged, in the perpetration of the offense, in violating law.  The manifest design of the exception in the policy is to guard against liability owing to the exposure to dangers incident to the performance of unlawful acts, and to that end only the lesser liability attaches where injury is received while the insured is violating law, even though the offense is never consummated.  If then deceased, who was neither an employee of the Chicago Great Western Railway Company nor an officer of the law, was injured while engaged in an effort to get on a moving car on the track of said company, the jury must have found the accident within the exception and returned a verdict for the defendant.

Appellant insists, however, that, even though the law be as stated, the instruction was not applicable to the evidence adduced by defendant, for that according to it he was on the train when he fell.  It appears from the evidence that he was an employee of the Chicago, Milwaukee & St. Paul Railway Company in Council Bluffs, and in going from his house on High Street he necessarily passed over the Chicago Great Western Railroad Company's track at the intersection of Sixteenth Avenue and Third Street. In the morning in question a train was passing when deceased reached the track, in coming down Sixteenth Avenue, and, according to the testimony of a little girl nearly twelve years old, he turned and walked rapidly along the side of the cars, seized the handholds near the end of one, and, in her words, "climbed up on the side of the car. He had his hands on the bars, and then he had his feet on the boards between the two cars.  He had his feet in between the cars and was holding on with his hands on the bars.  There was an open space between the cars, and I could look through between the two cars.  I saw him fall

2. SAME: instruction: prejudice.

right through the hole between the cars. He had his hands on the bars, and his feet were away up the side of the car. He rode along on the cars for a little ways. I don't know how far: fifty or sixty feet, that is about right. He rode some little distance. He was upon the car for a little time, holding on and trying to get through between the cars, holding on and climbing up and trying to get through. I watched him while he was doing that. He was upon the car for a little time and rode along until he fell through." This account was somewhat corroborated by other evidence that the body had been dragged on the ground twenty or thirty feet to the place where found, which was near the north rail with head against it, a portion crushed away, and a part of the skull between the rails, and that blood stains and human hair were on the rails back the distance of two of these and on the wheels of three of the cars. On the other hand, evidence in behalf of plaintiff tended to show: That, when deceased reached the street intersection mentioned, he called to some one on the engine repeatedly, and after it passed stood near "the south side of Third Street across Sixteenth Street," where the track curves to the south, when last seen by the witness, apparently waiting for the train to pass; that the train was moving at a speed of about ten miles per hour; that the door of a car toward the caboose, at times open about twelve inches, was swinging back and forth, extending out three and one-half or four feet from the car; that the left side of deceased's head and face was badly lacerated, and his skull crushed, but no portion removed, and other injuries slight, save that one leg was broken; and that the ground indicated that the body had been dragged not more than ten feet.

It is apparent from this recital of the evidence that the instruction could have referred to none other than the evidence given by the eyewitness, and, in our opinion, referring to what deceased was said to be doing as attempting

to get on a moving train, was without the slightest prejudice. According to the witness, his hands were on the bars, and his feet "between the cars" and way up the side of the cars. The tenor of her testimony was that he was struggling to retain his position, was in an effort to hold on, "trying to get through between the cars, holding on and climbing up and trying to get through." In the absence of an instruction defining what was meant by "getting on a moving car," the jurors would naturally construe "on" in the connection used and in view of the evidence as at the upper part or in a position to be supported. In returning the verdict for defendant, they necessarily rejected plaintiff's theory that deceased was struck by the swinging door, and must have found either that the injury resulted "from voluntary exposure to unnecessary danger or obvious risk of injury" or while attempting to or being on a moving car. If they rejected the former defense, they must have concluded that the injury was received as a result of being on the moving car or while attempting to get on, and either finding would defeat recovery of the full indemnity. So that, conceding the instruction not to be as explicit as it might have been, there is no ground for saying that the jury could have been misled to plaintiff's prejudice.

The order setting aside the verdict and granting a new trial is *reversed.*