## Joseph N. Loving, Appellee, v. Michael Kane et al., Appellants.

1. BROKERS—*commissions.* Where the evidence shows that plaintiff had a written contract with defendants to act as their agent, and induced the purchaser to sign a contract and afterwards another agent acting for defendants made the sale, a verdict for plaintiff for commissions may be sustained.

2. EVIDENCE—*as to negotiations in securing a purchaser for a farm.* In an action on a written contract to recover commissions for the sale of defendant's farm, testimony of the purchaser as to negotiations with plaintiff concerning the purchase prior to the date of the written contract is admissible to show what plaintiff did in securing a purchaser there being evidence that there was a verbal contract before the written one.

3. EVIDENCE—*to show work done by plaintiff in securing purchaser for defendant's farm.* In an action to recover commissions for sale of defendant's farm, a memorandum made by plaintiff and the purchaser, at the recorder's office, showing the amounts of the mortgages is admissible in evidence, since it was part of the work done in attempting to make sale.

4. NEW TRIAL—*newly discovered evidence.* In an action to recover commissions for the sale of a farm, a new trial is properly denied where the newly discovered evidence only tends to impeach plaintiff and is merely cumulative of other evidence.

5. NEW TRIALS—*where newly discovered evidence would not lead to different result.* A new trial is not granted because of newly discovered evidence, unless it would probably lead to a different result.

6. TRIALS—*where it is contended trial judge was absent during final argument.* In reviewing the question whether it was error to deny a motion for new trial on the ground that the trial judge was absent during the final argument, a statement made by the judge in disposing of the motion, to the effect that he was not absent, which is incorporated in the bill of exceptions controls and *ex parte* affidavits are not considered.

Appeal from the Circuit Court of Macon county; the Hon. WILLIAM G. COCHRAN, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 18, 1913. Rehearing denied April 18, 1913.

JACK, DECK & WHITFIELD, for appellants.

WHITNEY & FITZGERALD and J. S. McLAUGHLIN, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

This is a suit brought by Joseph N. Loving to recover a commission from Michael Kane and Nora Kane for the sale of a farm of the defendants. Plaintiff recovered a verdict and judgment for $363.10. The defendants appeal.

Appellants assign numerous errors. Among others it is insisted that the evidence does not show that appellee was the procuring cause of the sale and that the court should have instructed a verdict for the defendants. Appellants owned a farm of 363 and a fraction acres, close to Dalton City in Macon county. Appellee is a real estate agent residing in Decatur. The evidence of appellee is that Nora Kane had frequently, prior to July, 1911, talked to him about selling the farm and fixed a price but no other terms; that on July 19, 1911, he met Mrs. Kane in Decatur and she asked him if he had any prospective buyers for her farm; that he replied "that from what I learn you have been turning down so many people about the sale of it that if I work for you any further I want it in writing," that she then signed a contract agreeing to take $200 net per acre; this contract was afterwards signed by Michael Kane; that it was agreed he should have all he could get above $200 an acre for his commission; that he at that time mentioned to Mrs. Kane four parties, among them John Henneberry as prospective purchasers, who were wanting to buy farms and that he wrote to them concerning the sale of this farm as soon as he had the contract signed by her; that after that he talked to John Henneberry several times, in regard to the sale of the farm; that about September 1st, he priced the farm to Henneberry at $201, an acre and Henneberry said if he could sell his farm he would take the Kane farm. Appellee at that time told Henneberry that he could readily sell his farm as he had buyers close to it who would gladly buy it. He again talked with Henneberry on September 14th, about the

mortgage on the Kane farm and they went to the recorder's office and examined the records. The same day Henneberry signed a contract authorizing appellee to. sell his farm of 194 acres for $40,000 "to be sold on condition that the owner can and does buy the 363 acre farm of Michael & Nora Kane in Sec. 25, in Mt. Zion Township and it is agreed by and between the parties that I will allow $100. com. in case of sale and agree to pay $201 per acre for the Kane farm." Appellee testifies that on that day or the next day he wrote a letter to the Kanes notifying them that he had sold their farm to Henneberry for $201 an acre. Appellants deny receiving any such letter, although a letter from Mrs. Kane to appellee states that she has a letter from appellee concerning a trade of the farms, and that she met appellee the day of the receipt of the letter and told him she would not trade, but appellants did not produce the letter. Appellee also testified that two days after writing the letter to the Kanes notifying them he had sold the farm, he got a telephone message from the Kanes to meet them in a certain store; that he went to the store and Mrs Kane was not there, but he met her on the street during the day and told her he had sold the farm to Henneberry and asked her if she would take the Henneberry farm in part payment; she said she did not want to trade and appellee replied "If you don't want to trade you don't have to, but then he is going to take the farm just the same. He has bought the farm alright and I says we will be around all right in a little while to put up some money and close the deal. And she says she was glad I sold."

On the 21st of September, appellants executed a contract for the sale of the farm to Henneberry, for $200 an acre, a real estate agent named Brock attending to the closing up of the deal. This contract provided that $3,000 should be paid cash and the balance March 1, 1912, with interest from January 1, 1912, the purchaser assuming as part of the purchase money,

mortgages on the premises for $29,000, with interest from March 1, 1912, and the Kanes reserving a certain "hog wire fence." Appellants claim the sale was made by Brock and not by appellee.

It is argued that if appellee had found a purchaser for the farm for appellants at $201 an acre, which would give appellants $200 an acre net, that they would not have sold it afterwards for $200 per acre to the same purchaser. Questions concerning the possession, the mortgages on the farm, interest on the purchase money to March 1st, the usual time of giving possession, the desire of the purchaser to get it as cheap as possible and other matters might overbalance the difference of $1 per acre or induce them to make the sale through Brock. The evidence of the appellee is contradicted by appellants. The contract of agency is in writing as is the contract signed by Henneberry that was delivered to appellee, and in the latter contract Henneberry agrees to take the land at $201 per acre. The jury could reasonably find that appellee found a purchaser who was able, ready and willing to take the land at the price fixed and that he was the efficient cause of the sale. Except for the written contract signed by Henneberry, the evidence would appear to preponderate on the side of appellants, as much of the evidence of appellee is contradicted by the evidence of the purchaser and the Kanes. The issue was one peculiarly within the province of the jury, who saw the witnesses, to decide and the trial court having approved the verdict this court cannot say the finding and the judgment are manifestly against the weight of the evidence.

Appellants contend that the court erred in admitting the evidence of Henneberry as to negotiations he had had with appellee concerning the purchase of the farm prior to July 19, the date of the written contract of agency. The evidence tends to show that he had the farm for sale before that time on a verbal agreement. The evidence was proper as it tended to show what

appellee had done in securing a purchaser and the negotiations were speaking acts leading up to the sale.

When appellee and Henneberry went to the recorder's office to examine the record concerning mortgages against the Kane farm, figures were made concerning the amounts of the mortgages on the records, these figures which are headed "Kane Mtg." were offered in evidence and admitted over objections of appellants. There was no error in admitting this memorandum as it was a part of the work done in attempting to make the sale.

There were eight instructions given at the request of appellee, the giving of each of which it is contended is error, we have carefully examined them and find no reversible error in them although there is some repetition. To review each instruction would needlessly prolong this opinion and serve no useful purpose.

It is also urged that the court should have granted a new trial because of newly discovered evidence. The newly discovered evidence only tended to impeach the appellee and was merely cumulative of other evidence; it was not by any means conclusive of the issue in the case. New trials are not granted because of newly discovered evidence unless it would probably lead to a different result. Where it is merely impeaching in its character it is insufficient to warrant a new trial. *Springer v. Schultz*, 205 Ill. 144; *City of Chicago v. McNally*, 227 Ill. 14; *Gregory v. Gregory's Estate*, 129 Ill. App. 96.

It is also contended a new trial should have been granted because the trial judge was absent from the court room during the final argument of the case. An affidavit of appellants was filed stating that during the argument of counsel for appellee to the jury the trial judge was absent from the court room. Counter affidavits made by bailiff and three jurors were filed stating that the judge was not absent from the court room during the argument of counsel. The

statement of the trial judge made in disposing of the motion for a new trial is incorporated in and made a part of the bill of exceptions. In this it is stated that the judge was not absent from the court room during the argument. A motion was made by appellants to strike the counter affidavits from the files, which was overruled.

It was not proper to file affidavits on either side of the question concerning the action of the judge. "Such matters cannot be shown in that way, but can only be made a part of the record by a proper recital in the bill of exceptions. What is done by the judge or what occurs in his presence is within his knowledge and must be recited over his certificate and cannot be made a part of the record by ex parte affidavits." *Peyton v. Village of Morgan Park,* 172 Ill. 102; *Mayes v. People,* 106 Ill. 306; *Scott v. People,* 141 Ill. 195; *Dreyer v. People,* 188 Ill. 64; *Gallagher v. People,* 211 Ill. 171; *Deel v. Heiligenstein,* 244 Ill. 239. Such affidavits are only proper when the judge desires that his memory be aided. The bill of exceptions reciting that the judge was not absent must control as to the facts. The affidavits were not on a matter in issue before the jury, but on a matter incidental to the trial and while counter affidavits may not be filed concerning newly discovered evidence which goes to the issue to be tried by the jury, or on a motion for a continuance, it is the practice to file affidavits and counter affidavits concerning the conduct of a jury, or on matters to be decided by the court which do not involve the issues tried by the jury. Finding no reversible error in the case the judgment is affirmed.

*Affirmed.*