63  229
66  466
66  468|

## The People v. Harry McDowell.

*Criminal law—Manslaughter—Abortion—Election of counts—Evidence—Improper language of counsel.*

1. Respondent was informed against for manslaughter, the *first* count being in the *short statutory* form, and the remaining *two* counts setting forth the *means* employed in an *attempted* abortion, the second count alleging that the deceased was *quick* with child. No objection was made to the proceedings on the *preliminary* examination, or to the *form* of the information, but on the *trial*, and *before* impaneling a jury, respondent's counsel asked that the people elect upon which of the counts a conviction would be asked, which request was refused.

 *Held*, that the ruling was right under the decisions of this Court. *People v. McKinney*, 10 Mich. 54; *People v. Annis*, 13 Id. 511; *Turner v. People*, 33 Id. 363; *Stuart v. People*, 42 Id. 257; *People v. Sweeney*, 55 Id. 586; *People v. Sessions*, 58 Id. 594.

2. Where, in the prosecution of a respondent for causing the death of a girl by abortion, it was the theory of the prosecution that respondent had gotten her with child, and then enticed her away from her father's house to a distant city for the purpose charged, the father of the child was allowed to testify that he was informed by the respondent's father that he had received a telegram or telephone message from his son informing him of the sickness of the girl, and that he wanted her mother to come and see her, which testimony was objected to as incompetent.

*Held*, that the testimony, under the theory stated, was part of the *res gestæ*, and competent.

3. The doctrine that error must be made to *affirmatively* appear applies as well in *criminal* as in *civil* cases.

4. Requests four and five were sufficiently covered by the general charge. (See page 234 of opinion.)

5. As to proper way to take advantage of *intemperate* language used by counsel in their arguments to the jury, see *Mayo v. Wright*, 63 Mich. 32 (head-note 1).

Error to superior court of Grand Rapids. (Parrish, J.) Argued June 30, 1886.   Decided October 21, 1886.

Information for manslaughter.   Respondent was convicted.   Affirmed.   The facts are stated in the opinions.

*S. D. Clay (Isaac Marston, of counsel), for respondent:*

Since the decision in *People v. Olmstead*, 30 Mich. 431, respondent could not be convicted of this offense under the count for statutory manslaughter.

Where an examination is waived, the prosecuting attorney, in filing an information, must confine himself to the offense *charged* in the warrant.   If the offense charged embraces others of *less* degree, the information may charge any of them: *Stuart v. People*, 42 Mich. 257-8.

The people should have been required to elect: *People v. McKinney*, 10 Mich. 94-5; *Tiedke v. City of Saginaw*, 43 Id. 64.

In cases of justifiable or excusable homicide, previous statements of the deceased, not made in the presence or hearing of the accused, are admissible: *Patten v. People*, 18 Mich. 329; *People v. Lilly*, 38 Id. 270.

Such evidence has also been held admissible in a case of assault and battery: *Jewett v. Banning*, 21 N. Y. 27.

*Moses Taggart,* Attorney General, for the People:

It is conceded that respondent could not have been con-victed of the statutory offense under the first count: *People v. Olmstead,* 30 Mich. 431.

But that the first and second counts were properly joined, see *People v. Sweeney,* 55 Mich. 587; *People v. Sessions,* 58 Id. 594.

Where the offenses are distinct and independent, they can-not be joined in separate counts: *People v. McKinney,* 10 Mich. 94; *Tiedke* v. *City of Saginaw,* 43 Id. 64.

The information in *ordinary* cases is not limited to the *evidence* shown on the examination, but only to the *transaction* shown by it: *People v. Annis,* 13 Mich. 511; *People v. Jones,* 24 Id. 215; *Turner v. People,* 33 Id. 363.

On waiver of preliminary examination, the same offenses may be charged in the information as if such examination was had: *Stuart v. People,* 42 Mich. 257.

SHERWOOD, J. The complaint in this case was made by Francis Boyland, charging that the respondent, on, to wit, the twenty-third day of December, A. D. 1885, at the city of Grand Rapids, feloniously and willfully did *kill* and *slay* one Sylvia Sawdy.

Respondent was arrested upon a warrant issued upon the complaint, and taken before the police court of Grand Rapids, where he waived an examination, and was held for trial in the superior court of Grand Rapids.

He was arraigned upon an information containing three counts, all charging manslaughter, the first being in the short statutory form, and the others setting forth the means employed in an attempted abortion, and the second count alleging that the deceased was quick with child. The re-spondent pleaded not guilty, and no objection was made to the proceedings in the police court, or to the form of the information.

A trial was had in the superior court in Grand Rapids, and the respondent was convicted of the crime of manslaughter, and sentenced to imprisonment at Jackson for the term of fifteen years.

The respondent brings the case before us for review.

Before impaneling the jury for the trial, respondent's coun-
sel asked that the people be compelled to elect upon which of
the counts they should rely. The court declined to grant
the request, and respondent excepted. We think the ruling
was right under the decisions of this Court. *Stuart v. Peo-
ple*, 42 Mich. 257; *People v. Sweeney*, 55 Id. 586; *People v.
Sessions*, 58 Id. 594; *People v. Annis*, 13 Id. 511; *Turner v.
People*, 33 Id. 363; *People v. McKinney*, 10 Id. 54. See, also,
*Jennings v. Commonwealth*, 17 Pick. 80; *United States v.
Furlong*, 5 Wheat. 184; 1 Arch. Cr. Pr. 292, 295; *Common-
wealth v. Hawkins*, 3 Gray, 463.

Sylvia Sawdy was the daughter of Dr. Sawdy, who, at the
time of the death of the daughter, was living at Howard City,
forty miles north of Grand Rapids, and had lived there and
practiced his profession for about seven years previous. His
daughter, at the time of her death, was about twenty-one
years of age, and had always lived in his family, except a few
weeks, when she worked for some of the neighbors. Dr.
Sawdy was sworn in the case in behalf of the people, and
testified that he knew the respondent; that his father lived
in Howard City, and that the witness first became acquainted
with the respondent about eighteen months before the trial,
which was about a year before the death of his daughter;
that he came to this place to see his daughter Sylvia, and was
in the habit of frequently visiting her; came generally even-
ings, on the Sabbath; that he had no business there except
to see her; that he corresponded with her; that Sylvia left
Howard City on the tenth of December to go to Grand Rap-
ids, and told her father, when she left on the train, she was
going to visit the respondent's mother; that the doctor heard
nothing from his daughter until the morning of the twenty-
third day of December, and was then informed by the re-
spondent's father that he had received a telegram or tele-
phone from Harry McDowell that "Sylvia was very sick, and

wanted her mother to go down there and see her," and thereafter, and on the next day, he read in the morning papers that she was dead.

The testimony relating to the information derived from the respondent's father was objected to as incompetent, but was admitted by the court. We think there was no error in this ruling.

The claim of the people was that the respondent caused the death of this daughter in an attempt to produce an abortion, and that it was this very sickness that he was then notifying to the parents of the daughter by the message to his father; that the daughter was then pregnant, by the respondent, with a quick child, and that the respondent not only produced the abortion, but in doing so killed the mother. We think, as the case stood, the testimony was admissible. It was the theory of the prosecution that the respondent had not only gotten Sylvia with child, but, when she left her father's house, she was enticed away by the respondent to allow him to commit the crime charged against him; and, in this view of the case, all that he did and said in furtherance of his wicked purpose, from the time Sylvia left her home, and the means he employed in doing and saying what he did, became part of the *res gestæ*, and proper to be given in evidence.

We fail to discover any error in the rulings of the court upon the testimony received, given by Drs. Bodle, Hake, and Bradish.

In regard to the statements of the deceased, in relation to her pregnancy, in the month of November, we think the record does not show sufficient upon that subject to enable us to determine whether or not what was expected to be proved would be competent, and the doctrine that error must be made to appear applies as well in criminal as in civil cases.

It is further claimed by counsel for respondent that the respondent's fourth and fifth requests to charge should be given as requested. These two requests are as follows:

"4. That if they find an instrument had been used for that purpose, and the evidence leaves it uncertain whether the respondent used such instrument, or that the deceased herself made use of it, then the jury must acquit.

"5. If the jury find that the death of Sylvia Sawdy was produced by means of an instrument thrust into her womb with intent to destroy a quick child, with which she was then and there pregnant, and they are unable beyond any reasonable doubt to say that the respondent made use of such instrument for such purpose, then they must acquit."

Upon the subject referred to in these two requests, the court said to the jury:

"In order to warrant you, under the law of the case, in rendering a verdict of guilty against the respondent, you must find from the evidence:

"1. That Sylvia Sawdy was pregnant at the time charged.

"2. That that pregnancy had so far advanced as to have developed into a live unborn child, liable to be killed by violence; in other words, had become a quick child.

"3. That the death of Sylvia Sawdy was caused by the respondent, by the thrusting up and into her womb some instrument with intent to destroy such quick child, with which she was then pregnant.

"If you have any reasonable doubt upon any of these facts, you must acquit the respondent."

We think these charges sufficiently cover, not only the ground stated in the requests, but the case as it was actually presented upon the facts.

Complaint is made of the argument presented to the jury, and language used by counsel for the people in summing up the case; but we find no objection taken to it by respondent at the time, and we fail to see that any could properly have been. Some strong expressions were indulged in, but the case itself, if the theory of the prosecution was correct, was one well calculated to arouse the energies and indignation of any virtuous advocate, and we are not prepared to say, from anything appearing in the record, any excess was reached.

The record is not very satisfactory upon some of the points made where exceptions were taken, but from anything appear-

ing we can discover no reason why the respondent did not have a fair trial in the superior court, and the judgment must be affirmed.

CAMPBELL, C. J., concurred.

MORSE, J. (*concurring in result*). In this case I agree in the affirmance of the conviction, but I cannot assent to the language, as a whole, contained in the opinion of my Brother SHERWOOD; therefore I deem it best to state the reasons upon which I base my vote to affirm the judgment. .

In regard to the information filed in the cause, the question raised is almost identical with that disposed of in this Court in the cases of *People v. Olmstead*, 30 Mich. 431, and *People v. Sessions*, 58 Id. 594. I still adhere to the views I expressed in the latter case, but as the majority of the Court in that case held otherwise, their determination must be considered as the settled law of this State. The decision in *People v. Olmstead* is practically overruled. My own opinion as to the soundness of the position taken by my brethren in *People v. Sessions* upon this question, having been once fully expressed and published, ought no longer to be cause for dissent.

The testimony admitted of Dr. Sawdy, the father of Sylvia,—that Mr. McDowell, the father of the respondent, came to him, and said, "Doctor, I received a telegram or a telephone from Henry [respondent] that Sylvia was sick, and he wants her mother to go down there and see her,"—cannot be sustained as proper, in my opinion, upon the ground taken by Justice SHERWOOD. It had no tendency to prove anything outside of the fact that Sylvia was sick at Grand Rapids, and that McDowell was with her, and wanted her mother to come there.

The illness of Sylvia, and the presence of McDowell with her, could be and was proven by direct and competent testimony, and the other was immaterial.

If there was a telegram, it should have been produced, or

its absence accounted for. If the news came by telephone, the respondent's father was the only competent person to testify as to the communication.

The testimony of Dr. Sawdy was purely hearsay. If he could testify properly to what McDowell's father told' him, then if the father, instead of going to see Dr. Sawdy, had sent a messenger, what the messenger said would have been legitimate also; and if such messenger had intrusted the verbal message to another, what he said to Dr. Sawdy could have been admitted, and so on *ad infinitum* until common rumor became a fact. If such evidence is admissible, then the story of the three black crows may yet have a legal exemplification.

Such testimony is dangerous, and ought not to be received.

My Brother SHERWOOD says:

"All that he did and said in furtherance of his wicked purpose, from the time Sylvia left her home, and the means he employed in doing and saying what he did, became part of the *res gestæ*, and proper to be given in evidence."

I have no fault to find with this declaration, but, used in support of the admission of this testimony, this assertion of the general principle becomes a license, not only to allow A. to show what the respondent said and did, but also to permit B. to state what A. told him the respondent said or did, and also to authorize C. to testify what B. told him that A. said to him, and thus on as far as hearsay can be extended.

My own view of this testimony is that this occurrence should have been proven by the father of the respondent, if at all, and the declaration of respondent to his father should have been stricken from the testimony of Dr. Sawdy.

Under all the evidence of the case, showing beyond dispute that Sylvia was sick, and respondent present with her, at Grand Rapids, I do not think the admission of the testimony could have been prejudicial in the least degree to the respondent; but if the illness of Sylvia, or the presence of McDowell

with her at this time, had been a controverted issue on the trial, the admission of this testimony would have, in my opinion, been just cause for a reversal of the judgment against the respondent.

I have adverted to the opinion of my Brother SHERWOOD upon this point because I am not willing to sanction language correct as a general proposition of law; but so applied in this particular case as to allow incompetent and hearsay testimony to pass without question, and perhaps become authority in the trial courts for its use in other cases.

In the course of the expert testimony the court made this remark in reference to a question asked of Dr. Hake:

"The counsel, in putting hypothetical questions, has a right to assume something, even if not proven."

The question objected to, however, and which called out the remark, did not state any fact or facts which might not be legitimately inferred from the evidence therein. Nor can I find that any question, embracing any fact not deducible or inferable from the testimony in the case at the time the question was propounded, was put and permitted to be answered after such remark. Therefore I see no prejudicial error in the remark, although, in my opinion, it was not correct as a legal proposition. *People v. Hall,* 48 Mich. 482; *People v. Millard,* 53 Id. 63; *People v. Sessions,* 58 Id. 611; *Mayo v. Wright,* 63 Id. 32.

The respondent complains that Dr. Bradish was permitted to give an opinion based upon what he saw at the *post mortem* examination, and what he had learned before and subsequent to such examination, without having previously given in evidence the facts he had so learned. This would clearly have been error if objection had been taken to the question. The record fails to show any such objection.

Complaint is also made of the intemperate language used by the counsel for the prosecution upon the argument to the jury. I do not think the counsel for the defense took the

proper course to bring the matter to the attention of the court. He did not rise in his place, and state his objection to the language of the prosecutor, and ask a ruling upon the question, whether the use of such language should be continued, but entered into a dispute with the prosecutor, at the outset, as to the truth of his remarks, and thereafter contented himself with saying, during the course of the argument, "I except to that statement," or "I take exception to that." As to the proper method of correcting abuses of this character, see *Mayo v. Wright,* 63 Mich. 32.

Nor do I think, upon reading the letters from the respondent to Sylvia Sawdy, in which letters it clearly appeared that he was the author of her shame, and that he advised and encouraged her to the final act which brought about her death, that the language used by the prosecutor was open to censure from the court.

The just indignation that naturally arises in the heart of any man must and will escape in utterance at such a time, and hot and burning words in condemnation of such inhuman and wicked conduct must be expected, and cannot, in the furtherance of justice, be well repressed.

I find no error in the proceedings.

CHAMPLIN, J., concurred.