M. St. Peter, Plaintiff, v. Iowa Telephone Company, Defendant.

**Assault:** AGENCY: EVIDENCE. In this action for assault by an alleged agent of defendant the evidence is held to warrant a finding of agency and that the assault grew out of an altercation relating wholly to defendant's business.

Evidence: COMPETENCY OF INFANT. The fact that a witness is of tender years is not conclusive on the question of competency, but relates to his degree of intelligence and capacity to understand the nature of an oath; and the conclusion of the trial court on this question will be accorded some weight on appeal, because of his better opportunity to discern the capacity of the witness. In the instant case the evidence of a child ten years of age, relating to matters of observation, was properly received.

Same: IMPEACHMENT. The time and place at which statements sought to be introduced for impeachment purposes are claimed to have been made should be proven, so that the witness assailed may be advised of the occasion. But where the witness sought to be impeached has testified to the same conversation as that at which it is claimed the contradictory statements were made the rule is satified.

Same: SCOPE OF CROSS EXAMINATION. Where it was sought to hold a telephone company liable for the assault of an agent, and the manifest purpose of the agent's direct examination was to discredit the plaintiff's theory of agency, his cross examination respecting the terms of his contract with defendant was proper, even though it developed facts additional to those shown on plaintiff's main case and relevant thereto.

Assault: EXCESSIVE VERDICT. It is held that the character of plaintiff's injuries growing out of the assault did not justify a verdict for $2,000, and it is reduced one half at plaintiff's election.

Admission of evidence: HARMLESS ERROR. Any error in permitting one party to testify to immaterial matters concerning which the other party has produced evidence is harmless.

*Appeal from Butler District Court.*—HON. C. H. KELLEY, Judge.

WEDNESDAY, MAY 10, 1911.

ACTION for damages for personal injuries resulting from an alleged assault by an alleged employee of the defendant while acting within the scope of his employment. There was a trial to a jury and verdict and judgment for plaintiff for $2,000. The defendant appeals. *Affirmed on condition.*

*Guernsey, Parker & Miller, George M. Craig,* and *Mullan & Pickett,* for appellant.

*F. J. McGreevy* and *E. H. McCoy,* for appellee.

Evans, J.—The evidence on behalf of plaintiff shows that he was severely assaulted and injured by one Bandy of Dumont, Iowa, on the evening of December 23, 1908. The plaintiff was a physician at Dumont. He went to the booth of the defendant company for the purpose of talking over the telephone with one of his patients who lived in the country. Bandy was in charge of the booth. The plaintiff made two trips to the booth about twenty or thirty minutes apart and upon the same errand. Upon the first trip Bandy went into the booth and undertook to get a connection with the party called for by the plaintiff, but failed to do so, and so reported to the plaintiff. The plaintiff went away, intending to return later, and did return, as already indicated. On the second trip, Bandy refused to make any attempt to get the party wanted on the alleged ground that there was no such person on the line. Upon the insistence of plaintiff that a second effort be made, an altercation between them arose, which resulted in the forcible ejectment of the plaintiff from the building by Bandy. Blows were struck by Bandy which resulted in injuries, the extent of which was in dispute at the trial. The appellant challenges the claim that Bandy was an employee of the defendant at the time of the alleged assault. Bandy was in the occupancy of his own building. This was located upon a business street. Bandy was engaged there in business for himself, which consisted of an insurance business and the sale of musical instruments. His living rooms were in the second story overhead. He had there a telephone exchange, which was in immediate charge of his wife, and which constituted a central office for three local mutual companies. The stair-

way leading upstairs was on the outside of the building. An arrangement was entered into between him and the defendant company whereby he rented a switchboard. It was the intention at that time that the defendant company should put in a booth upstairs in connection with the exchange for the purpose, as we infer, of doing a toll line business. It was found later that the booth could not be put into the second story. It was thereupon placed in the first story in one of the rooms occupied by Bandy in his other business. The following is a diagram of such rooms:

We think the evidence is abundant to warrant a finding that Bandy was in charge of this booth for the defendant company, and that he extended its conveniences to customers and collected tolls for its use, and received compensation therefor in the form of a percentage of tolls collected.

I.   We think that the evidence was sufficient, also, to warrant a finding that the altercation between the plaintiff and Bandy arose wholly in relation to the defendant's

1. Assault: agency: evidence.

business.   The plaintiff assumed to have no other business there than to obtain the use of defendant's line for communication with a patient.   Bandy's refusal to serve him was in relation to defendant's business and the assault and ejectment resulted from plaintiff's insistence that an attempt be made to give him service over defendant's line.   Granted that there is more or less conflict in the evidence on these questions, the plaintiff is entitled to have the most favorable view taken for the purpose of supporting the verdict.

II.   Objections were made to the testimony of one Vern Wilson, a boy ten years of age, and a witness for the plaintiff.   It is urged that he did not understand the

2. Evidence: competency of infant.

nature of an oath, and that he was therefore incompetent as a witness.   The following preliminary examination was had:   "Q. Do you know the nature of an oath?   Do you know what an oath is, Vern, when you are sworn in court?   A. I don't know. I don't know what the meaning of an oath is when I am sworn in court.   Q. Do you know what you are to do when you come here on the witness stand?   A. Tell what I have seen.   I don't understand what it means about sworn here in court.   Q. Do you know what would be done with you or to you if you should tell a story here on the witness stand?   A. Be punished.   I don't know how I would be punished.   I attend school; am in the third

grade.   Q. Now, when you came here to the courthouse, and came upon the witness stand, what did you know about what you were to do so far as telling the truth is concerned? Did you know about that? A. No, sir. Q. Did you know whether you are to tell the exact truth when you come here or whether you are not to tell it? A. Tell the truth. Q. Do you know why you hold up your hand when you are sworn in court? A. No, sir. Q. And you do not understand that? A. No, sir. By the Court: Well, you understand, Vern, that you must tell the truth, and nothing but the truth, do you? A. Yes, sir. By the Court: Do you understand that if you don't do that you will be severely punished? A. Yes, sir." The tender age of this witness is by no means conclusive against him. The degree of his intelligence and his capacity to understand the nature of an oath form the criterion of his competency. Manifestly the trial judge has better opportunity to judge of these than an appellate court, and some allowance must be made for the judgment of the trial court in such a case. The fact that the witness may not know the definition of the word "oath" or that he does not know "why you hold up your hand when you are sworn in court" is by no means decisive against him. This question is fully discussed in our previous cases: *State v. King,* 117 Iowa, 484; *Clark v. Finnegan,* 127 Iowa, 644. We think that the court did not err in permitting the witness to testify. We are confirmed in this by an examination of the testimony given. He saw part of the trouble between plaintiff and Bandy. The matters testified to by him were matters of observation, and well within the range of intelligence of a child ten years old.

III.   The appellant complains of certain impeaching evidence which was given by plaintiff as a witness in rebuttal. One Shreave was a witness for the defendant. He was present in Bandy's store when the trouble be-

gan, and testified to what he claimed to have seen before

**3. Same: impeachment.** he left. He was asked on cross-examination if he did not say to Mr. Martin that "he left before any blows were struck." He answered that he did not. In rebuttal, the plaintiff being recalled as a witness, the following question was put to him: "Did you hear Mr. Shreave state to Mr. Martin there that he got away before any blows were struck?" This question was objected to as not proper impeaching evidence, because no foundation was laid therefor in the cross-examination of Shreave, in that no time or place was fixed. The objection is based upon an assumed state of the record as given above. On the face of it the objection was good. But there are other parts of the record which put the question in a different light. Shreave testified that after he left the place of the altercation he went "into Mr. Martin's furniture store. I did not tell Mr. Martin that I came away before the trouble. I told him that I saw part of it. That was after doctor (plaintiff) spoke to me. I didn't say I left before any blows were struck." Upon his recall the plaintiff testified that he also went to Martin's store right after the affair. It was in this connection that the question was put to him as to what Shreave said. It is manifest from the whole record that Shreave and the plaintiff had reference to the same conversation "there" had in Martin's store immediately after the trouble. That removed the objection which appeared upon the face of the interrogatory, and it was fairly within the discretion of the court to permit the question to be put. *Gibson v. Seney,* 138 Iowa, 387.

Complaint is made because of certain cross-examination of the witness Bandy which was permitted by the court. On cross-examination of Bandy, the court permitted plaintiff's counsel to ask the witness concerning the provisions

**4. Same: scope of cross examination.**

of his contract with the defendant. This examination disclosed the fact that the witness took tolls for the company for the use of the booth, and that he was paid therefor by the company with the tolls so received. It is urged that this was not proper cross-examination, and that it related to a matter vital to plaintiff's case in the first instance. We think appellant's position is not tenable. On direct examination the witness testified that the building was his own, and that he used it for his own business, and that the defendant company paid no rent therefor. He also testified that the booth was put in on the first floor solely because they had been unable to get it onto the second floor. The manifest purpose of this line of evidence was to negative the claim of the plaintiff that the witness was in charge of the booth for defendant as an employee of the defendant. The cross-examination was therefore pertinent and proper, even though it developed additional facts to those shown upon plaintiff's main case.

IV. The verdict was for $2,000. The external injuries inflicted were superficial, and were not apparently great. It is urged that the verdict was excessive, and this is the most serious question in the case. It is not claimed that the plaintiff could recover exemplary damages against the defendant. None were claimed in the petition, and no reference was made to the subject during any part of the trial. It is strenuously urged that the evidence did not justify so large a verdict for actual damages alone. The evidence on behalf of plaintiff shows that he was disabled almost wholly from attending to his professional work for a period of six weeks, and that up to the time of the trial he had not fully recovered. The trouble from which he suffered was largely in the nature of nervous disorders. It is shown on behalf of defendant that the plaintiff suffered to some extent from such disorders, and that he had

5. ASSAULT:
   excessive
   verdict.

"fainting spells" prior to the time of the alleged assault. This evidence on behalf of defendant presents two edges. If the plaintiff was in a broken state of health prior to his injuries, the result of the assault and battery upon him might prove much more serious than though he had been a strong man. It is doubtless true, also, that the mental pain and suffering resulting from assault and battery may be much greater than that resulting from an accidental injury. Whether upon this record the verdict was clearly excessive is a question upon which we are not wholly agreed. The view of the majority is adverse to the verdict in this regard.

V. Appellant's argument involves some complaint of the instructions given by the court. Appellee contends that no exceptions to the instructions were saved. What we have already said is decisive of all objections made to the instructions, and we have no occasion to deal with the question whether the exceptions were properly saved.

Appellant complains of a certain leading question which was put to the plaintiff as a witness. It was answered before objection was actually made and the court permitted the answer to stand. It is urged that the witness answered so quickly as not to give proper time for an objection. This is a matter that is so manifestly within the observation of the trial court that only an extreme case would justify interference on our part. We do not think such a case is presented here, although the question was clearly leading.

Nor was there any reversible error in the ruling of the court permitting the plaintiff to testify that he went into the country the next morning to visit the same patient whom he had attempted to call over the phone at the time of the altercation. The defendant put in evidence the fact that plaintiff had gone into the country to visit a patient. In

6. Admission of evidence: harmless error.

rebuttal the plaintiff went into the same subject more in detail, some of which was doubtless immaterial, but it was clearly nonprejudicial.

Upon the whole record, we find nothing that will warrant a reversal except the excessive amount of the verdict as already indicated. If appellee elects to remit one-half his verdict, the judgment will be affirmed on such condition with costs. Otherwise the judgment must be *reversed*. *Affirmed* on condition.