STATE OF IOWA, Appellee, v. HOMER WRIGHT, Appellant.

JURY:  Competency—Client of Prosecutor.  A juror is not subject to challenge in a criminal cause because he is one of the clients of the public prosecutor.

**CRIMINAL LAW: Evidence of Other Crimes.** Evidence of the rela-
2  tions of the parties, in a prosecution for attempted miscarriage, is
proper on the element of motive, even though such testimony does,
in a remote degree, tend to show a separate and distinct offense.

**CRIMINAL LAW: Appeal and Error—Hearsay as Harmless Error.**
3  Testimony by prosecutrix in a prosecution for attempted miscar-
riage that she had told a named doctor that defendant had sent her
to him is harmless, when prosecutrix had already testified, without
objection, that defendant had sent her to said doctor for the purpose
of having a miscarriage produced.

**CRIMINAL LAW: Curing Error by Prompt Withdrawal.** Error in re-
4  ceiving clearly improper but not inherently prejudicial testimony is
cured by the prompt withdrawal of such testimony by the court.

**WITNESSES: Impeachment—Failure to Fix Definite Time.** Failure to
5  fix, for the purpose of impeachment, the *exact time* when an occur-
rence took place does not necessarily preclude the reception of im-
peaching testimony, when the record demonstrates that there could
not have been any doubt in the minds of the witnesses as to what
time was being referred to by the questioner.

**CRIMINAL LAW: Trial—Justifiable Deductions in Argument.** Severe
6  characterization by counsel in argument of the conduct of an ac-
cused will not constitute reversible error, when fairly justified by
the record. Record reviewed, and held not to present reversible
error.

*Appeal from Greene District Court.*—M. E. HUTCHISON, Judge.

APRIL 6, 1921.

REHEARING DENIED OCTOBER 1, 1921.

THE defendant appeals from a conviction of the crime of
attempting to produce a miscarriage. The facts, so far as they
are necessary to the decision of the points presented for review,
will be stated in the course of the opinion.—*Affirmed.*

*J. A. Henderson, A. D. Howard,* and *Church & McCully,*
for appellant.

*Ben J. Gibson,* Attorney General, *B. J. Flick,* Assistant At-
torney General, and *E. G. Graham,* for appellee.

STEVENS, J.—The indictment charged the defendant with having administered certain drugs to one Gladys Jackson, on or about April 17, 1919, for the purpose of producing a miscarriage. Evidence was introduced upon the trial from which the jury were warranted in finding that, commencing on or about April 20, 1918, and continuing until Easter Sunday, 1919, the defendant and Gladys Jackson repeatedly engaged in acts of sexual intercourse. The defendant frequently called at her home, and together they often attended public dances, the defendant, who is a musician, playing in the orchestra. Gladys testified that the defendant, on or about April 17, 1919, gave her two small boxes, containing twelve capsules each, of a drug or substance, which he gave her directions for taking, saying that the same would relieve her of her condition. She testified that she took all but two of the capsules, without effective result, and that, on October 23, 1919, she gave birth to a child, at a maternity hospital in Kansas City.

A chemical analysis of the contents of one of the capsules showed it to contain green apiol, ergotin, oil of savin, and aloin, which medical experts testified would tend to produce a miscarriage.

It is not claimed by appellant that the evidence is insufficient to sustain the verdict, or that it is contrary thereto. We shall, therefore, refer to only such parts of the record as are necessary to a proper understanding and decision of the errors alleged, which are confined to the overruling of a challenge of a juror for cause, rulings upon the admissibility of evidence, and alleged misconduct of counsel for the State in the opening statement and in argument to the jury.

I.   The examination by counsel touching the qualifications of W. L. Joy for a juror elicited from the said Joy the fact that he was one of the clients of R. G. Howard, one of the attorneys for the prosecution, and that Howard was then in his employ. A challenge for cause, under Subdivision 5 of Section 5360 of the Code, was interposed by the defendant and overruled by the court; and, as defendant's peremptory challenges were already exhausted, the juror was sworn in as a member of the panel. The ruling was in harmony with our holding in *State v. Carter*, 121 Iowa

1. JURY: competency: client of prosecutor.

135, where this provision of the statute was fully considered and construed.

II.   Gladys Jackson was permitted to testify fully as to her relations with the defendant, and, in the course of her narrative, stated that the defendant pinched her, and, as a conclusion, that he forced her to submit to his desires the first time.   Objection was lodged against all of this testimony, upon the grounds that it was incompetent, immaterial, and irrelevant, which objections were overruled; and it is now argued by counsel that this evidence tended to show the commission of other crimes than that charged in the indictment, and that same was inadmissible.   The evidence was wholly insufficient to prove the crime of rape, as suggested by counsel.   It was clearly proper for the State to prove the relations between the defendant and Gladys, not for the purpose of showing the commission of other crimes (although it might do that), but as tending to show motive.   *Scott v. People,* 141 Ill. 195 (30 N. E. 329); *People v. McDowell,* 63 Mich. 229 (30 N. W. 68); *State v. McLeod,* 136 Mo. 109 (37 S. W. 828); *People v. Josselyn,* 39 Cal. 393; *State v. King,* 117 Iowa 484; *State v. Mulhollen,* 173 Iowa 242.   We deem it unnecessary to review the authorities cited by counsel for appellant upon this point.   The rule is well settled in harmony with the holdings of the above cases.

2. CRIMINAL LAW: evidence of other crimes.

III.   Gladys testified that she went to Boone on March 28th, at the solicitation and request of the defendant, to consult Dr. Knight; that, on the following day, in the afternoon, she saw the doctor at his office, and, among other things, stated that the defendant had sent her to see him.   This statement by the witness was objected to, upon the ground that it was hearsay.   Dr. Knight, called as a witness for defendant, denied that Gladys told him who sent her to him.   Conceding, without deciding, that this evidence should have been excluded, upon the ground that it was hearsay, it is perfectly apparent that the defendant could have been in no wise prejudiced thereby.   Gladys testified, without objection, that the defendant induced her to go to Boone to see Dr. Knight for the purpose of having a miscarriage produced.   The fact that she told the doctor that the defendant sent

3. CRIMINAL LAW: appeal and error: hearsay as harmless error.

her to him added no weight to the probable effect of her testimony properly received upon the trial to that effect.

IV. Mrs. Jessie Jackson, the mother of Gladys, was permitted, over proper objection of counsel for the defendant, to testify that Dr. Knight, whom she, in company with Gladys, visited at his office in Boone, told her that he. had treated the defendant, some months before, for a loathsome disease. This evidence was clearly inadmissible, but was, within a very few minutes after it was received, stricken from the record by the court, upon its own motion, who ruled that it had been improperly admitted. The evidence was too remote to have been inherently prejudicial, and the prompt action of the court in striking it from the record must be held to have cured the error.

*4. CRIMINAL LAW: curing error by prompt withdrawal.*

V. Gladys further testified that the boxes containing the capsules were given to her by the defendant after midnight on April 17th, near the Chautauqua grounds in Jefferson; that she and the defendant had attended a dance at Jefferson on that evening; and that, after they left the dance, they went riding in a Ford sedan, accompanied by Glen Stearns and Flo Gagner, members of the orchestra that had furnished the music for the dance. Flo Gagner, called by the defendant, testified that she did not remember having gone riding in company with the above-named persons after the dance that evening; and Stearns testified that he did not go riding with the parties named, but that he visited with the defendant at the hotel in Jefferson for a considerable time after the dance. These witnesses were recalled by the State for further cross-examination, and asked if they did not, in April, 1919, without stating the date, after they had attended a dance at Jefferson, meet the defendant, in company with Gladys and some other parties, after midnight near the Catholic church. They answered that they did not. After the defendant rested, counsel for the State called Ruby and Clarence Fullum and A. J. Swaney in rebuttal, and sought to show by them that they saw the defendant and the other parties named, in a Ford sedan at the place designated,—that is, near the Catholic church in Jefferson.

*5. WITNESSES: impeachment: failure to fix definite time.*

As already appears, the interrogatories propounded to these

witnesses did not fix the exact day of the month on which it was claimed the meeting occurred. Counsel for defendant objected to the questions asked these witnesses, upon the ground that they did not seek to lay a proper foundation for impeachment, and objected to the testimony of the witness called in rebuttal, upon the grounds that no proper foundation for impeachment had been laid, and that the testimony offered was not proper rebuttal.

It may be conceded that the questions propounded to the witnesses Gagner and Stearns for the purpose of laying a foundation for impeachment were not quite definite as to time, but there can be no question that all of the witnesses understood that reference was being made to the night of the dance that had been referred to by Gladys in her testimony. The record leaves no doubt upon this point. The reference was to the night on which all of the parties had attended a dance at Jefferson, in April, 1919, and the place was definitely pointed out. The answers of the witnesses Ruby and Clarence Fullum and A. J. Swaney were not very decisive, and it may be doubted whether their testimony was really prejudicial to the defendant; but we hold, be that as it may, that proper record was made for the purpose of impeachment. *Gibson v. Seney,* 138 Iowa 383; *St. Peter v. Iowa Tel. Co.,* 151 Iowa 294.

VI. Frequent objection was interposed by counsel for defendant to the remarks of counsel for the State in their opening statement, and in argument to the jury. That counsel for the State at times went beyond the limits of legitimate argument must be conceded. In view of the conclusion reached upon the alleged misconduct of counsel, no benefit could result to the profession by setting out the exact language complained of. Counsel for the State sought to offer some apology to the jury because of their being called to serve as jurors. Statements of a somewhat similar character were disapproved in *State v. Giudice,* 170 Iowa 731. The reversal in that case was, however, based upon other grounds. Taken as a whole, the remarks of counsel just referred to were not particularly objectionable.

6. CRIMINAL LAW: trial: justifiable deductions in argument.

Special counsel for the State repeatedly, in the course of his argument, stated that the defendant threatened to "blacken

the character of Gladys Jackson'' if she attempted to do anything with him. The language of the witness upon which the statement was based was: ''He told me he could get a lot of his pals and make me out a bad girl, if he wanted to.'' The above language was used by the defendant in a conversation relating to the condition of Gladys. The deduction drawn by counsel may have been stronger than the language of the witness justified; but it must be admitted that, if the defendant used the language quoted, he did not do so from innocent or disinterested motives. The record shows that Gladys was only about 17 years of age, and the fair inference from the record is that she never sustained immoral relations with anyone except the defendant. At another time, counsel referred to the defendant as ''one of the greatest arch villains in central Iowa.'' The court promptly sustained the objection of defendant's counsel to this remark, saying to counsel that this language had no place in the argument, and that it would be stricken. Counsel did not, thereafter, repeat the statement, and we are satisfied that the prompt and decisive ruling of the court removed any prejudice that the counsel might have aroused in the minds of the jurors by the improper statement.

Exceptions were also urged to numerous other remarks of counsel, some of which would better have been omitted; but a careful consideration of the arguments as a whole, by counsel upon both sides, leaves no doubt in the mind of the court that the defendant had a fair trial. His interests were sedulously guarded at every step of the proceedings, by vigilant counsel. The rulings of the court were prompt and decisive, and the evidence fully warranted the verdict of the jury, finding the defendant guilty. We refrain from reviewing the prior decisions of this court touching the conduct of counsel in argument to the jury. Suffice it to say that, while reasonable latitude must be allowed to counsel in giving their inferences and deductions from the testimony of the adverse witnesses, it should always be confined to matters appearing in the record, and kept free from undue denunciations or inflammatory utterances. Upon the whole record, we are convinced, and hold, that the defendant had a fair trial, and that the judgment of the court below should be, and it is,—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.