9 N.J. Super. 569 (1950)
76 A.2d 49
J. LEONARD LINDNER, PLAINTIFF,
v.
THE FIRST NATIONAL BANK & TRUST COMPANY OF MONTCLAIR, ADMINISTRATOR OF THE ESTATE OF HARRISON D. GOEHRING, DECEASED.
Superior Court of New Jersey, Law Division.
Decided October 6, 1950.
*571 For plaintiff, Messrs. Markley & Broadhurst.
For defendant, Messrs. Stevenson, Willette & McDermitt, by Mr. Harvey G. Stevenson.
HARTSHORNE, J.C.C.
In plaintiff's medical malpractice suit against defendant bank as decedent doctor's administrator, plaintiff demands answers to certain interrogatories, under the rules (Rule 3:33). To these interrogatories defendant objects on the ground that they call for answers as to a matter which is "privileged" (Rule 3:26-2). This privilege plaintiff denies.
The question thus raised hinges upon the proper interpretation of the Evidence Act (R.S. 2:97-2) so far as it applies to evidence concerning "transactions with or statements by the decedent." This statute, and its predecessors in New Jersey, together with its analogues throughout the country, have been a prolific source of litigation, largely due to the nice distinctions which the courts have been compelled to draw in construing these statutes, in order to effectuate their underlying purpose on the one hand, and yet avoid the evil they are apt to create on the other. This purpose has been well stated by our courts as follows: "Their purpose is, in the language of Dr. Wharton (Wharton on Evidence), to provide that when one of the parties to a litigated obligation is silenced by death, the other shall be silenced by law." Smith v. Burnet, 35 N.J. Eq. 314 (E. & A. 1882), accord Leek v. Wieand, 2 N.J. Super. 339, 346 (Ch. Div. 1949). To apply this principle completely, by preventing a party, adverse to the representative, from presenting any evidence whatever to prove a transaction with decedent, obviously would often *572 result in preventing any such transaction from ever being proved, a definite denial of justice. In fact, this evil, even as mitigated both by statutory amendments and limiting court decision in New Jersey, as later noted, leaves it an open question as to whether the statute does not do more harm than good. See the vigorous opinion of Professor Wigmore, fortified by fact, to that effect. (Wigmore, Evidence, 3rd Ed., § 578.) That, however, is beside the present point.
The general purpose of the statute, to prevent a party, adverse to the decedent, from giving his own version of the transaction, when death prevents the decedent from testifying to his version, is obviously not violated by receiving evidence as to the decedent's version alone. For the effect of this is helpful to the party silenced by death, and this helpful effect exists even where decedent's version of the transaction is given the court at the instance of the adverse party. Thus, the statutory purpose is fulfilled by compelling the decedent's representative to give decedent's version of the transaction, at the instance of the adverse party, either at the trial or in answer to interrogatories. Further, to do this would mitigate, if not destroy, the evil, above alluded to, which the enforcement of the statute so often entails.
This construction of the statute, so sound on principle, has indeed been the holding of the New Jersey courts as far back as 1879, where Chancellor Runyon said: "Clearly, the act will not admit of the construction that a party sued in a representative capacity cannot be required to give testimony as a witness for the opposite party, when called by that party. It was not intended to deprive a party of the testimony of his adversary as a witness for him in the cause where the latter is sued in a representative capacity. His so calling him, however, will not render his own testimony competent in the cause, and that is what was decided in Hartman v. Alden, 5 Vr. 518 * * *." Daw v. Vreeland, 30 N.J. Eq. 542 (Ch. 1879). Not only so, but, as stated by the Chancellor in the above case, even when the representative party is thus compelled to testify, his testimony, as so compelled, does not *573 permit the party adverse to him to testify, since the representative was not "called as a witness in his own behalf." Hartman v. Alden, supra (E. & A. 1870).
The above decisions, including that of our highest court, would, of course, settle the present issue, were it not for the fact that after their decision, the Legislature amended the statute in question, thus giving rise in turn to differing decisions. The statute in question, as later amended (P.L. 1900, c. 150, p. 363) instead of providing, as previously construed in the Daw case, supra, that the party adverse to the representative party should not himself be permitted to testify in such cases, provided that the right of parties to testify in such a case "shall not extend to permit testimony to be given by any party to the action * * * unless the representative offers himself * * *" (italics ours). Since "any party" includes the representative party, it was, therefore, held that such representative party could not give testimony, even at the instance of the party adverse to him. Deak v. Perth Amboy Gaslight Co., 1 N.J. Misc. 457 (1923, Sup. Ct. on Circuit); Reid v. Reinhardt, 34 N.J.L.J. 185 (Cir. 1911). Indeed, the statute, as so amended, might well have prevented the adverse party to the representative from calling even third party witnesses. As so worded, the statute thus broadened the major evil above alluded to, of preventing any proof at all of transactions with decedents, if the representative refused to volunteer, and thus left many unjust situations completely remediless.
Naturally, when the statutes were revised in 1937, our Legislature, in the light of this evil, again amended the statute to its present wording. Its present wording, instead of continuing the above broadened evil of the 1900 act, provides, in substance, that no "other party," than the representative "may testify as to any transaction with * * * the decedent unless * * * the representative of the decedent offers himself as a witness on his own behalf," and similarly testifies, with an exception not here pertinent. The present statute thus permits others than the party adverse to the decedent, *574 to so testify ad libitum. It also permits the party adverse to the representative to call the representative to so testify, without such act of his opening the door to his own testimony. In short, the statute returns in substance to its status in this regard at the time of the decisions of Daw v. Vreeland, and Hartman v. Alden, supra. Such being the case, even if plaintiff here compels the defendant representative to answer these interrogatories, and same are used in evidence at the trial, as distinguished from being used as mere discovery, such use will not open the door for plaintiff to testify at the trial as to his version of the transaction. In short, to compel the defendant representative to answer the interrogatories propounded will in nowise run counter to the purpose of the statute in question, but will, on the contrary, lessen the above evil, which the statute so often draws in its wake.
So far the issue has been considered as presented by counsel, i.e., as to the existence of a privilege. But, it is questionable whether the matter of privilege is presently involved at all. For, privilege, in this aspect, concerns confidential communications between persons holding confidential relationships to each other, a husband and wife, attorney and client, and fellow jurors, plus the privileges, question at common law, of priest and penitent, physician and patient. (Wigmore, Evidence, 2nd Ed., § 2197.) Public policy  the law  requires that these confidences shall not be revealed to third parties, without consent, at any time, in court or out of court.
But here, even as between plaintiff patient and defendant's decedent-doctor, no confidential communication is involved, the transaction being simply a matter of X-ray treatment. Rather the present question is whether, if the answers to the interrogatories might help the living party, by his own testimony, to win his case against the dead party, contrary to the policy of the above statute, such answers will be inadmissible at the trial.
But that they are not inadmissible for this reason has been shown above. Again, assuming for the sake of argument, that they were thus inadmissible at the trial, even then, under *575 the rules, "It is not ground for objection that the testimony will be inadmissible at the trial, if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." (Rule 3:26-2.)
That these answers will be "reasonably calculated to lead to the discovery of admissible evidence" is clear. Here the meritorious issue is whether decedent-doctor was guilty of malpractice in giving X-ray treatments to plaintiff. The interrogatories ask not only the names and addresses of all present during the administration of such X-ray treatments, but the nature of their employment, how many such treatments were administered, and of what they consisted. Since plaintiff presumably was conscious at the time of these treatments, and participated therein, at least as their object, they deal with transactions with him, which he could by his oath deny  the usual test for the applicability of the statute. But it is equally clear that answers to these questions might reveal witnesses other than defendant administrator, who could testify under our statute for plaintiff, even though the representative remained silent. Such being the case, the testimony sought would appear "reasonably calculated to lead to the discovery of admissible evidence." In that aspect the interrogatories would appear proper in any event.
Defendant's objections are overruled.