106 N.J. Super. 515 (1969)
256 A.2d 123
ANNIE OSTERMAN AND PETER OSTERMAN, PLAINTIFFS,
v.
LIONEL EHRENWORTH, DEFENDANT.
Superior Court of New Jersey, Law Division.
Argued April 9, 1969.
Decided July 15, 1969.
*516 Mr. David R. Simon argued the cause for plaintiffs (Messrs. Simon & Allen, attorneys; Mr. George L. Seltzer on the brief).
Mr. Richard M. Icklan argued the cause for defendant (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
WEIDENBURNER, J.S.C.
This is a medical malpractice action in which the defendant-physician objects to answering certain interrogatories on the ground that the answers sought would be in violation of the patient-physician privilege recently created by L. 1968, c. 185 (N.J.S. 2A:84A-22.1 et seq.).
The complaint alleges that the defendant negligently prescribed the drug prednisone for the treatment of an arthritic condition in plaintiff's legs. Plaintiff served the defendant with interrogatories. When defendant did not respond to the interrogatories now in question, plaintiff moved to strike defendant's answer and direct a trial as to damages only. The interrogatories under attack are the following:
"14. Has defendant ever previously utilized prednisone in the treatment of arthritis or any other illness, disease or symptom? If yes, state (a) the names and addresses of all those so treated, (b) the illness, symptom or disease for which they were treated, (c) defendant's reasons for utilizing prednisone in such treatment, (d) the length of time for which prednisone was prescribed, (e) whether such persons are still under defendant's care.
15. If the answer to question 14(e) is no with regard to any person, state the name and address of each such person or persons, together with the date and reason that treatment was discontinued.
*517 16. If the answer to question 14(e) is yes with regard to any person but prednisone is no longer used in the treatment of such person or persons, state the name and address of each of such patients, together with the date and reasons that the use of prednisone was discontinued.
19. If question 17 (inquiring as to whether it was defendant's practice to treat all patients exhibiting the same symptoms as the plaintiff with prednisone) is answered in the negative, state the names and addresses of at least three patients exhibiting symptoms similar to plaintiff Annie Osterman's, for whom defendant did not prescribe prednisone, and state why said drug was not used. (Parentheses supplied).
20. Has defendant ever prescribed prednisone for any person other than plaintiff Annie Osterman, where such prescriptions were renewed continuously for three years or longer?
21. If question 20 is answered in the affirmative, state (a) the names and addresses of all those so treated, and (b) the length of such treatment.
22. If the answer to question 20 is no, state (a) the longest length of time for which defendant continuously prescribed prednisone, (b) the name and address of each such patient or patients, and (c) the length of such treatment.
50. Has defendant ever prescribed prednisone for any patient other than plaintiff Annie Osterman, to be taken more than 7 tablets per day? If so, state the names and addresses of each such patient and length of time such treatment was continued.
51. Had defendant knowledge, during the course of his treatment or thereafter, of any other physician who has prescribed prednisone in dosages exceeding 7 tablets per day? If so, state the names and addresses of each such physician, the dosage defendant understood them to prescribe, and the length of time such treatment was continued."
At common law and prior to 1968 New Jersey did not formally recognize a patient-physician privilege. Hague v. Williams, 37 N.J. 328, 334-335 (1962) and cases and authorities there cited.
Prior to the legislative recognition of the patient-physician privilege in this State (N.J.S. 2A:84A-22.1 et seq., supra), however, our highest courts compelled disclosure of information relating to a patient's health, which was received or obtained in the course of the patient-physician relationship, without the patient's consent, only where the public interest Williams, supra, p. 336; Myers v. St. Francis Hospital, 91 or the patient's private interest required it. Hague v. N.J. Super. 377, 386-387 (App. Div. 1966).
*518 In Hague the plaintiffs sued the defendant-physician for medical malpractice. Defendant prevailed in the trial court and on appeal the question was stated to be:
"* * * whether there exists a duty which defendant allegedly breached, i.e., whether the knowledge of the child-patient's pathological condition obtained by defendant physician in the course of consultation or treatment is of such a confidential nature that the physician is barred from an extra-judicial disclosure thereof, absent plaintiffs' consent." (Hague v. Williams, supra, p. 332).
The court in the cited case held that the physician might disclose the information possessed by him concerning the physical condition of the patient to a person with a legitimate interest in the patient's health where the physical condition of the patient is made an element of a claim. At the same time the court recognized the limited right of the patient against disclosure in the absence of a statutory patient-physician privilege in the following language:
"A patient should be entitled to freely disclose his symptoms and condition to his doctor in order to receive proper treatment without fear that those facts may become public property. Only thus can the purpose of the relationship be fulfilled. So here, when the plaintiffs contracted with defendant for services to be performed for their infant child, he was under a general duty not to disclose frivolously the information received from them, or from an examination of the patient.
This is not to say that the patient enjoys an absolute right, but rather that he possesses a limited right against such disclosure, subject to exceptions prompted by the supervening interest of society. We conclude, therefore, that ordinarily a physician receives information relating to a patient's health in a confidential capacity and should not disclose such information without the patient's consent, except where the public interest or the private interest of the patient so demands. Without delineating the precise outer contours of the exceptions, it may generally be said that disclosure may, under such compelling circumstances, be made to a person with a legitimate interest in the patient's health. See 43 Minn. L. Rev., supra, 960; 8 Wigmore, supra, 856. One of these exceptions arises where, as here, the physical condition of the patient is made an element of a claim. While that claim had not yet been pressed to litigation, the same policy which during litigation permits, even demands, disclosure of information acquired during the course of the physician-patient relationship allows the disclosure thereof to the person against whom the claim is made, when recovery is sought prior to or without suit. *519 At this point the public interest in an honest and just result assumes dominance over the individual's right of non-disclosure. (Hague v. Williams, supra, p. 336)."
In Myers v. St. Francis Hospital, supra, pp. 386-387, it was held that interrogatories directed to a defendant-physician in a malpractice action asking "the number of occasions he treated conditions similar to infant plaintiff's, inducing him to perform an exchange transfusion, and the name, address, date and factual account of every patient for whom he performed an exchange transfusion in the preceding two years" must be answered to enable the plaintiff "to cross-examine the doctor with respect to his qualifications and experience" and on his represented status as a specialist in the treatment of infant children.
The general question presented for decision here is whether the new statutory patient-physician privilege has effected any change in our prior decisional law, and, specifically, whether the newly-enacted privilege permits a physician, without the consent of a patient who is not a party to litigation, to respond to interrogatories which would reveal the identity of the non-party patient, the ailment for which he was treated, and the details and duration of such treatment.
The research of counsel and the Court has not disclosed any decisions on the question involved subsequent to New Jersey's legislative enactment of the patient-physician privilege. Although it is recognized that, as a general rule, a trial court is under a duty to follow the law as enunciated by courts of superior authority [Fox v. Bd. of Ed. of West Milford Tp., 93 N.J. Super. 544, 557-558 (Law Div. 1967) and cases there cited], a trial court cannot ignore a subsequent legislative enactment which represents an expressed public policy [Cf. McGrath v. Jersey City, 70 N.J. Super. 143, 148 (Law Div. 1961), affirmed 38 N.J. 31 (1962); Hague v. Williams, supra, p. 335], if litigants are to enjoy the right to expect the judiciary to have issues before it "met and decided when presented." Ridgefield Park v. Bergen Co. Bd. of Taxation, 31 N.J. 420, 426 (1960). In this forum, as in courts of *520 higher authority, action and decision "is inescapable" (Ibid.) where legislative expression of public policy may have effected a change in the law of the State. Cf. 21 C.J.S. Courts, § 187, p. 304.
This Court, therefore, proceeds to determine what effect, if any, the statute has on the principles enunciated in our prior decisional law.
N.J.S. 2A:84A-22.2 provides in pertinent part as follows:
"Except as otherwise provided in this Act, a person, whether or not a party, has a privilege in a civil action * * * to refuse to disclose, and to prevent a witness from disclosing, a communication, if he claims the privilege and the Judge finds that (a) the communication was a confidential communication between patient and physician, and (b) the patient or the physician reasonably believed the communication to be necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefor, and (c) the witness (i) is the holder of the privilege, or (ii) at the time of the communication was the physician or a person to whom disclosure was made because reasonably necessary for the transmission of the communication or for the accomplishment of the purpose for which it was transmitted * * * and (d) the claimant is the holder of the privilege or a person authorized to claim the privilege for him."
The definitions of "holder of the privilege" and "confidential communication between patient and physician" are found in N.J.S. 2A:84A-22.1. This section of the statute defines these phrases as follows:
"* * * (c) `holder of the privilege' means the patient while alive and not under the guardianship or the guardian of the person of an incompetent patient, or the personal representative of a deceased patient; (d) `confidential communication between physician and patient' means such information transmitted between physician and patient, including information obtained by an examination of the patient, as is transmitted in confidence and by a means which, so far as the patient is aware, discloses the information to no third persons other than those reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it is transmitted."
Our statute provides for certain exemptions from and exceptions to the patient-physician privilege. See *521 N.J.S. 2A:84A-22.3 through 22.7. Without reciting the statutory exemptions from and exceptions to the privilege, it may be observed that they disclose that the legislative draftsmen were cognizant of and subscribed to the philosophy expressed by the Supreme Court in Hague v. Williams, supra, pp. 335-336, and penetrate the statutory shield only where a legislative policy determination was made that the public interest or the private interest of the patient required it. Giving full recognition to the general principle that "[p]rivileges which enable a person * * * to decline to testify himself, whether they arise from the marital status, or physician and patient relationship, or relate to self-incrimination or otherwise, are obstacles in the path of the normal trial objective of a search for ultimate truth" [State v. Briley, 53 N.J. 498, 505 (1969) (Emphasis supplied)], this Court is constrained to hold that the statute reflects a legislative determination that the policy behind the patient-physician privilege is of greater weight than the evidence it makes unavailable. See Comments and Annotations on the New Jersey Rules of Evidence by the Rules of Evidence Study Commission of the New Jersey Legislature (1968), p. 5. None of the statutory exemptions from and exceptions to the privilege evince any legislative intention to subordinate the benefits which inure to the relationship of patient-physician from the privilege to any countervailing benefit to society by subscription to the principle of liberal pre-trial discovery to the degree that a physician would be required, without the consent of the patient, to disclose confidential information to a third-party plaintiff where the Legislature has not made a policy determination in the statute that the public interest or the patient's private interest demanded it.
It is obvious that the defendant's knowledge of his patients' conditions and maladies was gained by his observation and examination of them in the discharge of his professional duties. Although the affected patients of the defendant, who are the "holders of the privilege" (N.J.S. 2A:84A-22.1), are not parties to this litigation and not *522 present to object, the defendant-physician has the right to assert the claim. N.J.S. 2A:84A-22.2(c)(ii). This right and duty of a defendant-physician is generally recognized. See Mayer v. Albany Medical Center Hospital, 56 Misc.2d 239, 288 N.Y.S.2d 771, 773 (Sup. Ct. 1968); Shepherd v. McGinnis, 257 Iowa 35, 131 N.W.2d 475, 481-482 (Sup. Ct. 1964); Peters v. Campbell, 80 Wyo. 492, 345 p.2d 234, 239 (Sup. Ct. 1959); Costa v. Regents of University of California, 247 p.2d 21, 34 (Calif. Ct. of App. 1952), reversed on other grounds, 116 Cal. App.2d 445, 254 p.2d 85 (Calif. Ct. of App. 1953); Metropolitan Life Ins. Co. v. Howle, 68 Ohio St. 614, 68 N.E. 4 (Sup. Ct. 1903); and 97 C.J.S. Witnesses § 302(a), p. 841.
In Costa the court upheld a trial court ruling under the patient-physician privilege statute of California in the following language:
"An objection to the question put to the defendant Low-Beer to name another of his patients that had a similar result was correctly sustained on the ground that the name was immaterial and would violate the confidence between the physician and said patient." (247 P.2d, at p. 34)
In Shepherd the defendant-physician testified on direct examination about the number of major operations performed by him and the limited number thereof in which operative wound infection had occurred. On cross-examination he was required, over objection to testify concerning the specifics of those cases and name the numerous other patients involved. On appeal the court stated:
"We have held several times the privilege extends not only to confidential communications to the physician, necessary and proper to enable him to treat the patient, but also to knowledge and information the physician gained by observation and examination of the patient in the discharge of the physician's duties. (Citations omitted). Accordingly, a physician cannot testify to the nature of the disease with which the patient is afflicted. (Citation omitted). It is plain Dr. McGinnis' knowledge of his patients' maladies was gained by his observation and examination of them in the discharge of his duties.
*523 Plaintiff asserts that only the patient may claim the privilege and the physician may not do so. It is true the privilege is for the benefit of the patient, not the physician. If the patient were a party to the action or present at the trial and did not claim the privilege such failure would be a waiver thereof. (Citations omitted). Here, the dozen or more patients of defendant-doctor about whom he was cross-examined were not parties and there is no indication or suggestion any of them were present at the trial. Their failure to claim the privilege which they were not in a position to assert may not be deemed a waiver thereof.
Since those in whose favor the privilege existed had not waived it, it was the doctor's duty to claim the privilege.
Chicago, G.W.R. Co. v. McCaffery, 178 Iowa 1147, 1155, 160 N.W. 818; Schwimmer v. United States, 8 Cir. (Mo.), 232 F.2d. 855, 863, (cert. den., 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52); In re Myer's Will, 184 N.Y. 54, 76 N.E. 920, 921. See also 97 C.J.S. Witnesses § 303, pages 845-846.
The Schwimmer opinion, supra, quotes this with approval from 58 Am. Jur., Witnesses, Section 467, `The seal of the law once fixed upon (such a privileged communication) remains unless removed by the party in whose favor it is there placed.'" (131 N.W.2d, at pp. 481-482).
The plaintiffs contend that our statute distinguishes between the communication necessary or helpful to diagnosis and treatment of the patient and the treatment itself. They further urge that the names and addresses of other patients are not within the difinition of "confidential communications" contained in the statute. Support for these contentions is based upon Lindner v. First National Bank and Trust Co. of Montclair, 9 N.J. Super. 569, 574 (Law Div. 1950) and Kaplan v. Manhattan Life Ins. Co. of New York, 71 App. D.C. 250, 109 F.2d 463 (1939).
Neither of the cited cases is germane. In Lindner plaintiff brought a medical malpractice action against the personal representative of the deceased doctor. The defendant objected to certain interrogatories on the ground that they called for answers concerning a matter which was "privileged". The interrogatories assailed sought the names and addresses of all persons present when the X-ray treatments, which were the basis for the malpractice allegation, were given by the deceased physician, the nature of the employment *524 of each such person, the number of such treatments and of what they consisted. The court held that the so-called Dead Man's Statute (then R.S. 2:97-2; now N.J.S. 2A:81-2) did not bar the answers and in dictum questioned the claim of privilege by differentiating between "a confidential communication" and "treatment" as follows:
"So far the issue has been considered as presented by counsel, i.e., as to the existence of a privilege. But, it is questionable whether the matter of privilege is presently involved at all. For, privilege, in this aspect, concerns confidential communications between persons holding confidential relationships to each other, a husband and wife, attorney and client, and fellow jurors, plus the privileges, question (sic) at common law, of priest and penitent, physician and patient. (Wigmore, Evidence, 2d Ed., § 2197) Public policy  the law  requires that these confidences shall not be revealed to third parties, without consent, at any time, in court or out of court.
But here, even as between plaintiff-patient and defendant's decedent-doctor, no confidential communication is involved, the transaction being simply a matter of X-ray treatment. Rather the present question is whether, if the answers to the interrogatories might help the living party by his own testimony, to win his case against the dead party, contrary to the policy of the above statute, such answers will be inadmissible at the trial." (9 N.J. Super., p. 574).
It is patent that no valid claim of privilege could be raised on the facts of Lindner, either under our prior decisional law or under the present statute, for the plaintiff-patient was "the holder of the privilege" and entitled to waive it in the prosecution of a claim made by him. See Hague v. Williams, supra, p. 336; 8 Wigmore, Evidence, § 2196, p. 111 and § 2386, p. 851 (McNaughton rev. 1961); and N.J.S. 2A:84A-22.4.
In Kaplan the beneficiary of a deceased-insured brought an action on an insurance policy and a defense of fraudulent misrepresentation of age was interposed. The court approved the admissibility of a hospital record showing the name, address and age of the deceased, but, contrary to the argument of the plaintiff in the instant case, only on the condition that there be no disclosure of the diagnosis or treatment. The court said:
*525 "In the application the insured stated his age as 55, and evidence in corroboration was introduced on the trial. The company produced evidence which tended to show that he was older. This included a hospital record, made a year later, which gave his age as 64. The admission of this record is assigned as error. Hospital records of diagnosis and treatment are usually held to be covered by statutes which, like D.C. Code, Tit. 9, § 20, forbid physicians to disclose confidential information acquired while attending a patient in a professional capacity. But a properly authenticated record of the patient's name, address, age, etc., is admissible, provided there is no disclosure of diagnosis or treatment." 109 F.2d, at p. 465. (Emphasis supplied).
As distinguished from the facts in Kaplan, some of the questions propounded by plaintiffs here seek disclosure not of name, address and age of a patient whose representation as to age is a material issue in litigation instituted by one claiming through the deceased patient, but of the names and addresses of third persons, not parties to the instant litigation personally or through representatives, as well as the nature of their illnesses, their treatment and the duration of the same. The decision in Kaplan cannot, even by the most extreme interpretation, be regarded as authority for the proposition that the names and addresses of third persons, not parties, personally or through representatives, to the litigation must be disclosed in conjunction with the nature of their illnesses and the treatment thereof. The emphasized language in Kaplan, supra, clearly destroys such a contention. Authority elsewhere also supports this conclusion. See Costa v. Regents of University of California, supra; and Shepherd v. McGinnis, supra.
Applying the foregoing conclusions of law to the interrogatories here involved, it is obvious that those numbered 20 and 51 would not violate any patient-physician privilege and must be answered. However, to require the physician to reveal the names and addresses of other patients conjoined with the nature of their illnesses and treatment provided for each would amount to judicial disregard of the legislatively expressed public policy; it would disclose that which the legislature has specifically acted to protect. *526 This the judiciary may not do, for it is our function to interpret, not to make, the law. Cf. Eckert v. New Jersey State Highway Dept., 1 N.J. 474, 479 (1949); Stellmah v. Hunterdon Co-op, G.L.F. Service, Inc., 47 N.J. 163, 171 (1966). If the sub-sections of interrogatories numbered 14, 15, 16, 19, 21, 22 and 50, calling for the names and addresses of past and present patients of defendant, are deleted, "no violence is done to the privilege as expressed in" the statutory rule of evidence and it is "construed and applied in sensible accommodation to the aim of a just result." State v. Briley, supra, pp. 505-506. Any violation of the privilege is thus obviated and the plaintiff would obtain the remaining information requested for such use as may be indicated in the cross-examination of the defendant on his "qualifications and experience." Cf. Myers v. St. Francis Hospital, supra, p. 386.
The motion to strike the answer and order a trial as to damages only is denied and defendant is ordered to answer the interrogatories involved in accordance with this opinion. Counsel for defendant shall present an appropriate Order within 10 days. R.R. 4:55-1.